Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MARY GRIFFIN, Respondent, for Compensation to Herself under the Workmen's Compensation Law, for the Death of JOHN GRIFFIN, *v.* A. ROBERSON & SON, Employer, and LUMBER MUTUAL CASUALTY INSURANCE COMPANY OF NEW YORK, Insurance Carrier, Appellants.

Third Department, December 28, 1916.

**Workmen's Compensation Law — injury to employee resulting from assault on fellow-servant — when injury does not arise out of employment — gratification of personal animosity.**

Where an employee in a lumber mill while engaged in carrying material was accidentally struck by a rail which was being handled by a fellow-servant and, becoming angered, assaulted his fellow-servant with the result that the latter retaliated and inflicted physical injuries, he was not acting within the scope or sphere of his employment, nor in promoting his master's interest, but on the contrary was gratifying a personal animosity, and he is not entitled to an award under the Workmen's Compensation Law.

KELLOGG, P. J., dissented, with opinion.

APPEAL by the defendants, A. Roberson & Son and another, from an award of the State Industrial Commission, entered in the office of the said Commission on the 14th day of June, 1916.

John Griffin, the injured employee, was employed as a cutter by A. Roberson & Son, a corporation engaged in the business of manufacturing and mill work. The manner of his

accident is described by the Commission in its award as follows: "While John Griffin was working for his employer at his employer's plant, and was engaged in carrying some stock to the racks where it was required to be placed, he passed a fellow-employee named Cartwright who was putting some blind rails on to a rack and one of his rails accidentally struck Griffin as he passed Cartwright. Griffin became angry over this accident and he kicked Cartwright who in turn shoved Griffin and Griffin fell over against the corner of a scrap box, thereby fracturing two ribs on his right side." The Commission further finds that Griffin at the time had latent Bright's disease which was aggravated by the injury, causing his death.

*Kelly & Hewitt* [*D. Theodore Kelly* of counsel], for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General* of counsel], for the State Industrial Commission.

*Maurice E. Page*, for the claimant.

COCHRANE, J.:

This case presents the inquiry as to whether a workman who in anger commits an assault upon a fellow-workman and as a result thereof receives an injury is within the protection of the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1914, chap. 41). Unless such injury arose "out of" the employment within the meaning of subdivision 7 of section 3 of the act, the claim cannot be sustained. (See § 10.)

Under the facts as found by the Commission, Griffin was the aggressor. He became angry over a slight and unimportant incident which the Commission has characterized as an "accident" and in his anger committed a crime by assaulting his fellow-servant and thereby was himself injured. It has been held in different cases that when a servant in the course of his employment is assaulted by another he may sometimes be entitled to compensation. Such was the case of *Carbone* v. *Loft*, decided without opinion by this court (174

App. Div. 901) and by the Court of Appeals (219 N. Y. 579). This is on the theory that the injured servant is protecting his master's property or promoting his master's interest, or that the assault on him was in some way incidental to the duty which he owed his master. But what duty to the master requires a servant to commit a crime ? When Griffin lost his temper and assaulted Cartwright he was not promoting or enhancing in any legitimate sense the interest of his employer, but he stepped outside the scope and sphere of his employment to serve a personal mental condition.

In *Matter of Heitz* v. *Ruppert* (218 N. Y. 148) it was said: "The injury must be received (1) while the workman is doing the duty he is employed to perform, and also (2) as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work. * * * The employer may be badly or carelessly served by two men engaged in his work, and yet it may be inferred, when one injures the other in a quarrel over the manner of working together in a common employment, that the accident arose out of the employment and was not entirely outside of its scope, if it was connected with the employer's work and in a sense in his interest." Now in this case it was not " a natural incident of the work " nor was it in any sense in the interest of his employer that Griffin lost his temper and as a result thereof assaulted his fellow-employee. This case *is* clearly distinguishable from the *Heitz* case, because in that case it did not appear as a matter of law that Heitz was the aggressor or violated any legal or ethical propriety. The altercation in which he became engaged was in connection with his work and in the interest of his employer, and it cannot be said as a matter of law that Heitz in the occurrence which caused his injury manifested any animosity or did anything more than to remonstrate with his fellow-servant for what the former considered an improper method in the performance of the work.

In *Matter of De Filippis* v. *Falkenberg* (170 App. Div. 153), Mr. Justice LYON has with much care and labor collated many cases bearing on the question of the right of an employee to compensation. Most of them are cases where the accident

arose as the result of horse play or sportiveness. It has generally been held in such cases that acts arising therefrom are outside the scope of the employment. The case at bar is very similar in its essential and controlling features to the case of an accident arising out of horse play. Diametrically opposite motives, it is true, occasion the injurious acts in the two classes of cases, but in both classes of cases the purpose is to gratify a personal desire. In one class of cases the motive is a spirit of frivolity or playfulness. In the other the motive is anger, animosity or vindictiveness. But in both the purpose is not to serve the master's interest, but to serve a momentary personal emotion of the employee. Whether the stirring of the mind be due to sportiveness or to vindictiveness, it is in both cases personal to the employee and the purpose of the act which brings about the injury is to serve that impulse of the employee and such act neither in fact does nor is it intended to subserve the interests of the master nor is it in any proper sense incidental thereto.

In the *De Filippis Case* (*supra*) it was said: " A test spoken of in the case of *Plumb* v. *Cobden Flour Mills Co., Ltd.* (7 B. W. C. C. 1), as a sound and convenient test in determining whether the injury arose out of the employment is whether it is in the scope or sphere of the employment. The injury in the case at bar was not a peril of the service, nor was it reasonably incidental to the employment. It was not an assault which had its origin in the nature of the employment, nor was in any way whatever connected with the master's work. In *Matter of McNicol* (215 Mass. 497) the court said: 'It [an injury] " arises out of " the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of " the employment.'"

Applying the test of the foregoing principle to the present case it seems quite clear that this claim does not measure up to

such test.   The injury was not a peril of the service nor reasonably incidental thereto.   It arose wholly from a voluntary act of Griffin entirely unnecessary, and not in the protection or advancement of the master's interest nor connected therewith. It was nothing more or less than the gratification of his personal feeling of animosity.   No reasonable inference can be drawn which legitimately or fairly demonstrates that the injury to Griffin was an incident of his work.   There was no causal connection between the work and the injury which resulted from the independent and affirmative and unjustifiable act of Griffin.   This seems to have been clearly an injury which did not arise " out of " the employment.   It was rather *outside* of the employment and one which grew out of a situation inaugurated by the injured employee himself for his individual purpose.

The award should be reversed and the claim dismissed.

All concurred, except KELLOGG, P. J., who dissented in an opinion.

KELLOGG, P. J. (dissenting):

Griffin was clearly within the course of his duty when Cartwright ran against him with the rails he was carrying. Griffin was disturbed and angered, and kicked towards Cartwright, and Cartwright pushed him, with the result that he received the injuries.   The injury did not result from the kick but from the fall after Cartwright pushed him.   We assume that the entire incident was over in a moment.   It was not an unnatural or an unusual thing for a workingman hit by another while at work to instinctively kick out at the man causing the injury.   It was in the interest of the employer that Griffin should be allowed to pass without any interference from another employee, and his kick was a remonstrance against the interruption he received in the performance of his duty.   The Commission finds that the act of Cartwright in hitting Griffin was purely an accident.   There is nothing to show that at the moment Griffin considered it an accident. Cartwright created an emergency by running into Griffin with the rails, and probably the fact that Griffin was hit called forth the kick without any particular volition upon his part.   He

did the natural thing to resist force with force.   As the Commission says, he was angry; but it was an anger of the moment created by the act of Cartwright.   The question is not whether Griffin, when suddenly hit, was negligent in hitting back, because the question of fault does not enter into consideration here.   It is only claimed that by hitting back he abandoned and lost his rights as an employee.   Perhaps Griffin did not do the wisest thing in kicking at Cartwright; it nevertheless was a natural thing to do.   All reasonable presumptions are in favor of the claim.   If Griffin had let the matter pass, and at a subsequent time, in cold blood, had made an assault upon Cartwright and received injuries causing his death, compensation could not follow.   But here the first assault was made by Cartwright, although as it now appears it was accidental.   In a way Griffin was defending himself.

"Altercations and blows may, however, arise from the act of a fellow-servant while both are engaged in the employer's work and in relation to the employment.   The employer may be badly or carelessly served by two men engaged in his work, and yet it may be inferred, when one injures the other in a quarrel over the manner of working together in a common employment, that the accident arose out of the employment and was not entirely outside of its scope, if it was connected with the employer's work and in a sense in his interest." (*Matter of Heitz* v. *Ruppert,* 218 N. Y. 148, 153.)

Change the circumstances slightly, and in the way in which it might have appeared to Griffin, and there can be no serious question but the claim is within the act.   Supposing that Cartwright, while Griffin was carrying the rails according to his duty, had assaulted him, and Griffin had kicked back, and then Cartwright had given him a push which eventually caused his death.   The only difference between the case supposed and the real case is that the Commission finds that Cartwright's act was accidental.   There is nothing to show that Griffin considered it accidental, or that he did anything other than would be done by the ordinary man who was hit under like circumstances.   The facts that Griffin cannot speak, and that the dividing line is so narrow here, make it proper to indulge in

the presumption that the claim is within the act. In the *Heitz Case* (*supra*) it is true that when in the yard Guth sprinkled water upon Heitz after Heitz told him he was putting too much upon the horses. They then separated and went about their respective employments. Shortly after they met in the plant, and as they passed, Heitz touched Guth upon the shoulder, saying: " George, don't do that again." It may have been in a friendly or an unfriendly way. Guth apparently considered it a challenge. Heitz undoubtedly intended it as such. He wanted Guth to understand that he could not safely take liberties with him again. In a way he invited the assault which resulted in his injury. It was assumed to be justified or excused by what had taken place previously. Guth slapped the claimant upon the shoulder, and, as the claimant turned around, Guth's finger came in contact with his eye. The court held that the injury was in the course of and arising out of the employment.

In *Matter of De Filippis* v. *Falkenberg* (170 App. Div. 153), since affirmed by the Court of Appeals (219 N. Y. 581), the award was reversed because some one, without cause or provocation, stuck a pair of scissors through a knot hole hitting claimant's eye. That was held not to be an injury received in the course of and arising out of the employment. It had no connection with the employment, but arose from horse play, or an assault unconnected with the employment.

Between these cases is the dividing line, and it seems to me this case naturally falls on the side of the *Heitz* case. I, therefore, favor an affirmance.

Award reversed and claim dismissed.