23578.   SCOTT *v.* TRAVELERS INSURANCE COMPANY
et al.

DECIDED MAY 18, 1934.

160

*Porter & Mebane,* for plaintiff.
*McDaniel, Neely & Marshall, Harry L. Greene,* for defendants.

GUERRY, J. The sole question in this case that arises in this court is whether the injury received by the claimant was an accident that arose out of his employment, under the terms of the workmen's compensation act, so as to. be compensable. It is a well settled principle of law that if there are any facts to sustain the findings of the Department of Industrial Relations, such findings are, in the absence of fraud, conclusive, and can not be disturbed by this court. The department, sitting to hear claims under the workmen's compensation act, acts as a jury. However, assuming the findings of fact by the commission to be true, their application of the law to these facts may be reviewed by this court. The director made the following findings in this case: "It appears from the evidence in this claim, and the director finds, as a matter of fact, that the claimant and one B. L. Crockett both aggressively engaged in a personal fight, which resulted in Crockett stabbing Scott." "Under the evidence in this case, and applying the law to the facts, the director finds that the injuries Scott sustained were not the result of an accident, and are, therefore, not compensable injury for which payment is allowed under the workmen's compensation act." From a careful review of the record in this case, we are unable to find any evidence which shows or would support an inference that the fight which resulted in injury to the claimant was a *personal fight,* as stated in the director's finding. The evidence of both the claimant and the other employees shows that there was no personal antipathy in the matter. That both the claimant and the other employee were friends at the time of the encounter, and that the whole matter grew out of the employment in which they were engaged, is undisputed. The case, then, would not come within the exception of the workmen's compensation act which declares that, "'Injury' and 'personal injury' shall mean an injury by accident arising out of and in the course of the employment, and shall not include . . *Nor shall 'injury' and 'personal injury' include injury caused by a wilful act of the third person directed against the employee for reasons personal to such employee."* Ga. L. 1922, p. 188. We do not consider it necessary to go further into this question by citing and discussing other rulings on facts as authority. Suffice it to say, the evidence does not support any finding that the fight was caused for "reasons personal" to the

claimant as those words are used and have been construed by courts of last resort.

It is admitted that the injury received by claimant was received in the course of his employment, but it is denied that it was an accident which arose out of his employment. Several points are presented to sustain this position. This is the question to be decided. It is now well settled that the facts that the injury is the result of the wilful or criminal assault of a third person does not prevent the injury from being accidental within the meaning of the workmen's compensation act. *Newsome* v. *Travelers Insurance Co.,* 143 *Ga.* 784 (85 S. E. 1035); *Pinkerton Detective Agency* v. *Walker,* 157 *Ga.* 548 (122 S. E. 202, 35 A. L. R. 557). Courts, in considering cases of assaults upon an employee by a co-employee or some third person, while differing in their app'ication of the law to the facts, all concur in the rule in determining whether the assault was an accident which arose out of the employment of the claimant. All concur that the assault must have had its origin in some risk of the employment. That the injury in the case at bar was accidental within the meaning of our workmen's compensation act seem clear. It was a sudden and unlooked for occurrence, not designed by the claimant. The purpose of the act is to insure the workman against personal injuries not expected or designed by the workman himself, provided such injury arise out of and in the course of his employment. The compensation to be provided and paid by the employer under the workmen's compensation act is not, however, for all accidental injuries which may be sustained by his employees in the course of their employment, but only for such as also arise out of the employment.

We have been unable to find any adjudication in Georgia as a precedent for the question here to be decided. Jenkins, J., in *Keen* v. *New Amsterdam Casualty Co.,* 34 *Ga. App.* 257 (129 S. E. 174), in considering an unprovoked assault by a third person upon an employee with a pistol where the attack had been first made upon the employer, said: "They were likewise authorized to find that the injury arose 'out of' the employment. Because of the claimant's presence as an employee at the time and place the assault upon the employer was perpetrated on account of the conduct of the business, *and especially because the assault upon the claimant might have been occasioned by his proper and active interven-*

*tion to protect the interest of the employment against a trespass arising out of its ordinary conduct and committed in his presence, including the life of his employer* with whom the claimant was then and there personally engaged in the conduct of his duties, the commission was authorized to find that the injury to the claimant was such an occurrence as might have been reasonably contemplated by the employer as a risk naturally incident to the nature of the employment, or at least was such an injury as, after the event, might be seen to have had its origin in a risk connected with the business of the employment, and to have arisen out of and flowed from this source as a natural consequence." (Italics ours.) In rendering that decision Judge Jenkins was applying the general rule accepted by a majority of the courts in determining whether an assault was such an accident as arose out of a particular employment. In Pekin Cooperage Co. *v.* Industrial Commission, 285 Ill. 31 (120 N. E. 530), where the claimant and another employee were each engaged in picking out or culling barrel staves for other employees, known as "barrel raisers," whose duty it was to make the barrels, the other employee, according to the custom of the trade, took some staves from claimant's rack and put them in his own. Claimant objected to this in language which was offensive, and a fight ensued. The court, in sustaining the finding of the industrial commission awarding compensation, said: "Rasor [claimant] clearly suffered an accidental injury in the course of his employment. . . There must be some causal relation between the employment and the injury. It is not necessary that the injury be one which ought to have been foreseen or expected, but it must be one which after the event may be seen to have had its origin in the nature of the employment. . . No fixed rule to determine what is a risk of the employment has been established. Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures another, it may be inferred that the injury arose out of the employment."

It has been held that an injury arises "out of" the employment

"when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment; as incidental to it. . . . A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment." Bryant v. Fissell (1913), 84 N. J. L. 72 (86 Atl. 458, 3 N. C. C. A. 585).

In other cases it has been held that an injury arises "out of" the employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person, familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." Union Sanitary Mfg. Co. v. Davis, 64 Ind. 227 (115 N. E. 676). Under these rules cases have been variously determined. In Griffin v. Roberson, 176 App. Div. 6 (162 N. Y. Supp. 313), it was held that "where a workman, while engaged in his work, was accidentally struck by a rail which another employee was handling, whereupon he became angry and kicked his fellow employee, and was by the latter shoved, so that he fell against a box and was injured, his injuries did not arise out of his employment, within the workmen's compensation law." In Jacquemin v. Turner & Seymour Mfg. Co., 92 Conn. 383 (103 Atl. 115, L. R. A. 1918E, 496), compensation was disallowed where an employee sustained a personal injury resulting from a quarrel and fight with another employee over a ladle for

pouring molten metal, which each desired to use at once in order to finish his work and get away for the day. In Polar Ice & Fuel Co. v. Mulray, 67 Ind. App. 270 (119 N. E. 149), an employee of an ice company, employed to check and collect for shortage of drivers, was shot and killed by a driver as a result of a quarrel over collection. Compensation was allowed. In McIntyre v. Rodgers & Co., 41 Scottish Law Reporter, 107, two workmen engaged in a tussle over the possession of a brush to be used in the work, and one was injured. Compensation was there allowed. In Hinchuk v. Swift, 149 Minn. 1 (182 N. W. 622), it was said: "An injury inflicted by a coemployee as a result of a quarrel over the manner of doing their work is within the rule."

The reasoning applied in these cases, as to the facts, are persuasive as to the validity of the claimant's right to compensation. However, defendant in error contends that the director has found that the claimant was the aggressor in the assault, and, there being evidence to sustain this finding, under the ruling of *Fulton Bag and Cotton Mills* v. *Haynie,* 43 *Ga. App.* 579 (supra), this court is compelled to affirm his decision. That ruling is, "Under the provisions of the workmen's compensation act a claimant is not entitled to compensation where the injury to the deceased employee was the result of a fight between him and a fellow employee *in which the deceased employee was the aggressor.* [Italics ours.] In such a case the injury was not an accident arising out of the employment within the meaning of the act." We admit the weight of counsel's argument. However, we are unable to agree that in *every* case where the claimant is *in fact,* the aggressor in a fight with a coemployee, in the course of his employment, he should be denied compensation. It is true that in some cases an active participation of an employee in a fight with another employee would constitute an assault and would label such employee the aggressor. However, it is also true that in some cases an active intervention on the part of an employee may be for the protection of his master's property, and in such cases he would not be guilty of an assault so as to label him an aggressor.

The claimant testified, and his testimony is uncontradicted, that it was his duty to look after and protect the machine where the other employee was at the time of the fight. As far as the claimant was concerned Crockett was a trespasser. He had no au-

thority to use the machine without the consent of claimant's over-seer. Claimant admonished him to get permission before using it, and then went and reported it to his overseer, who told him to go and tell Crockett to get off the machine, that if he wanted to use it to come to see him and he would arrange it. Upon returning to the machine he found Crockett still there. Crockett refused to leave the machine. Possibly quick action was necessary to save his employer's machine from harm. Would, then, he be compelled to stand idly by and watch it injured or trespassed upon without intervention, or should he, in violation of his duty to keep others away from the machine, stand by and not intervene?

The *Haynie* case, supra, was not one in which an employee had committed an assault upon another employee in protecting his employer's property or business, and would not conflict with this ruling. As a matter of fact, the director's finding is not that the claimant was the sole aggressor, but that they "both agressively" engaged in a personal fight. However, for the purposes of this decision, we assume that the claimant was *in fact* the aggressor. It is true that in many cases it has been held that where the claimant was the aggressor in a personal encounter between him and a coemployee, he could not recover compensation, but we have been unable to find any which upon their facts are contrary to what we are inclined to hold. The majority, if not all, of the cases which make decisive the fact that the injured employee was the aggressor in the altercation do not contain facts showing that the nature of the employee's intervention was the protection of the employer's property, but are cases where a dispute arose over some part of the employer's work and where the fight was not conducive to the welfare or good of the employer. In Stillwagon v. Callan, 183 App. Div. 141 (170 N. Y. S. 677), claimant's husband and another employee were engaged in unloading bricks from cars by the use of automobile trucks. Each was to unload one car alone, and then both were to unload the third together. When the husband finished his car and went to the third car he found the other employee unloading this car, although he had not finished unloading his first. A fight ensued over who had priority on the third car, which resulted in death of the claimant's husband, he being the aggressor. The court held the compensation was not allowable. That, however, was purely an assault over the manner of doing the master's

work, and there is no suggestion that any interest of the master was involved in the assault. In Jacquemin v. Turner & Seymour Mfg. Co., supra, and Griffin v. Roberson, supra, where the claimant was the aggressor, the assault was not committed in the interest of the master in the protection of his business or property. Heitz v. Ruppert, 218 N. Y. 148 (112 N. E. 750, L. R. A. 1917A, 344), is a case involving principles similar to the case at bar, and sustains our position. Claimant, employed as a driver by a brewing company, brought his horses into the stable, where a fellow workman proceeded to wash them off with a hose. Claimant told his fellow workman that he was using too much water on the horses, when the workman intentionally sprinkled some water on the claimant, who then left the place. Shortly afterward the claimant, returning to his work, met the other workman, and, as he passed, touched him on the shoulder, saying, "George, don't do that again." The latter slapped claimant on the shoulder, and, as claimant turned around, a finger of the other employee stuck in his left eye, causing injuries by reason of which it was necessary to remove the eye. Compensation was allowed, although claimant was the aggressor. The decision was put on the theory that it was the duty of claimant to protect his employer's horses and see that they were not injudiciously washed.

In Plouffe v. American Hard Rubber Co., 207 N. Y. S. 373, where the claimant, angered when a fellow employee took a pencil from behind his ear, slapped a fellow employee, who retaliated by striking claimant on the jaw, which caused injury resulting in an abscess of his cheek, it was held that the injury did not arise out of or in the course of his employment. The case of Heitz v. Ruppert, supra, was discussed, the court saying: "This is a case where the claimant was the aggressor. The pencil which he had was his own property. . . *He was not defending the property of his employer as in the case of Heitz v. Ruppert, supra.*" (Italics ours.) In Griffin v. Roberson, supra, it was said: "Griffin was the aggressor. He became angry over a slight and unimportant incident which the commission has characterized as an 'accident,' and in his anger committed a *crime* by *assaulting* his fellow servant, and was thereby himself injured." (Italics ours.) In the same opinion, referring to cases where a recovery has been granted, the court said: "This is on the theory that the injured servant is protecting his master's prop-

erty or promoting his master's interest, or that the assault . . *was in some way incidental to the duty which he owed his master."* (Italics ours.)

In Swift *v.* Industrial Comm., 287 Ill. 564 (122 N. E. 796), where it was held that "Where an employee whose duty it is to repair leaks in steam pipes in a large packing plant is injured in a fight with the foreman of a department whither the employee had been summoned by the blowing of a whistle in accordance with the custom when a leak was discovered, the injury is one arising out of and in the course of the employment, where the evidence warrants the conclusion that the altercation was not personal but grew out of matters connected with the injured employee's work." The court further said, in rendering the opinion in that case: "We find much discussion in the briefs as to who was the aggressor in the fight in which Blum was injured. While such question might have some bearing on whether the dispute arose out of and in the course of the employment or was purely a personal matter between the parties, we do not think it is necessarily decisive." One other decision which is strongly persuasive is that of Western Indemnity Co. *v.* Pillsbury, 170 Cal. 686 (151 Pac. 398), where it was held that a personal injury inflicted on a foreman in charge of a gang of section hands on a railroad by one of the laborers under him, in an altercation between them which grew out of the foreman's efforts to take a shovel away from the laborer in order to protect the property of his employer and to maintain his authority as foreman, was an accident arising out of and in the course of the foreman's employment.

It will be seen, therefore, from the above decisions, that any rigid rule with regard to compensable injuries under the workmen's compensation act, where the injured employee is the "aggressor," is useless and not sound under all the circumstances that might arise. The true rule applied in those cases in which the court has made the fact that the injured employee was the aggressor decisive, and has denied compensation, is that he was the "aggressor" in an *assault in law.* In other words, the employee must have been guilty of a criminal assault. Such a construction of these cases is the only just one. It is unquestionably true that it is the right and duty of a servant to *protect* the property of his employer. If A, the servant of B is *charged with the duty* of preventing trespassers

from coming on B's property, and C, after having been given warning to leave, refuses to do so, A may use just as much force as is necessary to expel C from the premises, and in doing so he is not guilty of an assault and battery, although he actually lay hands upon him. Thus, assuming that A and B were under the operation of the workmen's compensation act and while attempting to eject C, using only the amount of force necessary, he was struck by C with a stick and wounded, should A then be penalized because in *actual fact* he was the aggressor? We think not. The resulting answer is because in law A was actually guilty of no *assault;* his actions were legal, and therefore he can not be legally termed the aggressor. In such a case C has not the right to retaliate with force unless A used more force than was necessary under the circumstances. To constitute an assault, the act itself must be unlawful, and if done in protection of property and no excess force is used, the act is lawful and does not constitute an assault. As is said in 5 C. J. 629, "As there can be no actionable assault or assault and battery, without an unlawful or wrongful act, the lawfulness of defendant's acts or conduct in the commission of an alleged assault or an alleged assault and battery may be shown by him in defense by way of justification or excuse." In those cases in which disputes have arisen between employees over the manner of doing the master's work and similar instances where the injury was held to be compensable, but not where the injured employee was the aggressor, each case will disclose that the injured employee actually committed an illegal assault and that the injury was the result of legal retaliation. A servant's occupation is in law the occupation of the master, and he would be entitled to do whatever the master might do in the *protection* of his master's property. It has been said that "a master may do that to protect his apprentice, which another could not do without being the assailant." Orton v. State, 4 Green (Iowa), 140. Further, "the same circumstances which excuse or justify homicide in defense of one's self will excuse or justify it in the defense of his servant." Pond v. People, 8 Mich. 150. "An agent, servant or employee may *defend* the property of his principal or master." (Italics ours.) 5 C. J. 634. In carrying out this right the servant may use that amount of force that is necessary for the lawful purpose and no more. If he uses excessive force he is then guilty of an assault, and for an injury received

through retaliation to such excessive force he can not recover. "If one attempts to deprive another of his goods, the latter is justified in laying hands on him to prevent him from so doing, and, if he persists with violence, may use force to cause him to desist, provided he uses only such force as is reasonably necessary." 5 C. J. 631. On page 638 of the same volume it is said: "One who is interfered with in the discharge of a duty, or in the protection of property, or in the performance of some act which he has a right to perform, may, when force is required, use such force as is reasonably necessary to enable him to carry out his lawful purpose. Whether it is in the exercise of self defense or in the discharge of some official or protective duty where force is permitted, the rule is the same."

A distinction must be made in cases of this character where the employee uses force in ejecting mere trespassers from his master's property, and on the other hand where he actively intervenes *to protect his master's property from injury.* In the first instance it must be found that the employee was *charged with the duty* of expelling mere trespassers, where there is no actual necessity of force for the protection of his master's property. In the latter case every servant is charged with the duty of protecting his master's property from injury.

From what has been said in this opinion, our conception of the case is that it should be remanded to the Department of Industrial Relations for further consideration, in accord with what is said herein, for the reason that the commission has failed to find on decisive facts. If the commission should find that there was no necessity for active intervention on the part of the claimant for the *protection* of his master's property from injury, but that the claimant *was charged with the duty of* keeping mere trespassers away from his master's property,—the machine in this case,—and that he had not been *expressly* instructed otherwise, and that in carrying out that duty he used only such force as was necessary for the purpose, we think he would be entitled to recover. Further, if the commission should find that the claimant's active intervention *was due to what he reasonably thought was necessary to protect his master's property from injury,* regardless of prior instructions, and that in doing so he used no more force than was necessary, he would be entitled to compensation. On the other hand, if the commission

should find that the claimant was not charged with the duty of keeping mere trespassers from the property (the machine), or if so charged he had been expressly instructed to use no force in expelling such a trespasser, and that there was no necessity for active intervention for the protection of his master's *property from injury,* or that in either instance he used more force than was necessary for the purpose, he would not be entitled to compensation. It is ordered, therefore, that the case be remanded to the Department of Industrial Relations for further findings of fact, with direction that judgment be rendered in accordance with what has been said in this opinion.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. Upon the hearing of this claim the director found as a *fact* that the claimant and a coemployee had "both aggressively engaged in a *personal* fight," which resulted in the injuries to the claimant. This finding of fact was authorized by the evidence, and is conclusive upon the superior court and this court. Under the provisions of the workmen's compensation act, the injury to the claimant was not an accident arising out of his employment, and the judge of the superior court did not err in affirming the judgment of the Department of Industrial Relations denying compensation. See *Fulton Bag & Cotton Mills* v. *Haynie,* 43 *Ga. App.* 579 (supra).