26146. LIBERTY MUTUAL INSURANCE CO. *et al. v.* REED.

Decided June 30, 1937.

*Neely, Marshall & Greene,* for plaintiffs in error.
*John S. Wrinkle, Wright & Covington,* contra.

Guerry, J. Mrs. Fred B. Reed filed a claim before the industrial commission, for compensation because of the death of her husband, Fred Reed, while he was an employee of the Rome Stove & Range Company. The Liberty Mutual Insurance Company

(plaintiff in error) was the insurance carrier. The sole commissioner denied compensation, and on appeal the judge of the superior court reversed that ruling and ordered payment of an award. Exception is taken to this judgment. It appears from the evidence adduced before the commissioner, that on September 14, 1935, Fred B. Reed, while employed as a molder by the Rome Stove & Range Works (hereinafter referred to as the employer), was killed by being shot through the back of the head by one Brock. Reed had been a member of the molder's union, but, together with four other employees, had refused to pay any further dues to the union. The union then demanded that the employer either pay the dues for the five men, including the deceased, or discharge them from their employment. This the employer refused to do, and because of this fact a strike was called which resulted in practically all the laborers leaving the employer, with the exception of these five. The employer hired other employees to take the places of those on strike, and trouble began at the plant of the employer. The plant was put under police protection; and because of the trouble occurring between the strikers and those who had replaced them, as well as the five men who had refused to join the union or go on a strike, two of these five men were caught at a place distant from the plant and severely beaten. It then became necessary for the employer to furnish taxicabs to transport their men to and from their place of work to their homes. On the day that Reed was killed, and about ten minutes before the time he arrived at the plant of the employer, two other employees had been shot by the strikers, who had congregated outside the plant. This shooting had occurred just as three taxicab loads of employees had driven up to the door to be unloaded. One of the men shot at that time was Tallent, who was one of the five men who had refused to join the union. Tallent and Plank, the other employee who was shot, were both armed with pistols. The commissioner found that Reed "had armed himself with the instructions or knowledge of his employer." Shortly after the first shooting, but before Reed was shot, the vice-president or superintendent of the employer came to the plant, took his pistol out of his car, and carried it into the plant. One witness testified that from the way he looked "he was frightened and mad and torn up." The chief of police of

Rome, a witness for the defendant, testified that there were a bunch of men congregated on the outside of the plant. The chief had three other policemen with him, and they "expected there was going to be trouble." After Mr. Henson, the superintendent, went into his office with his pistol, shooting began from the inside of the building, and "I turned to go out where the bunch of men was, and I told them: 'Boys, all of you be quiet out here, and stop this ganging up, and get back.' They all backed. Just about that time Mr. Reed's car came in the taxi, and some one in the crowd holloaed, 'Pull him out of there, pull him out of there.' A fellow by the name of Ingram right to my right opened the door of this taxi, and I grabbed his hand and slammed the door and told the taxi driver, . . 'Go ahead, boy,' and when I done that, Mr. Reed raised up on the seat and fired in Ingram's chest, shot him right in there, and the bullet come out there; and when they done that, I couldn't tell what happened then. It was just a volume of guns firing, and the whole thing was covered up in smoke, and Mr. Reed was shot in the back of the head." Over a hundred shots were fired, and the bullets went into the taxi and the door of the building and along the walls of the plant. Another witness testified that he saw a man named Brock fire through the back of the taxi the shot that killed Reed. The chief of police further testified that Reed fired the first shot; that he thought the fire from the other men was caused by the act of Reed shooting Ingram; and that he thought, if Reed had not fired his gun, his men could have taken care of the situation.

The finding of the sole commissioner was in part as follows: "After careful consideration of the evidence adduced in this case, the director finds as a matter of fact that Fred B. Reed, deceased, was an employee of the Rome Stove & Range Company, September 14, 1935, but at the time of his death he had not reached the place of his employment. The record further discloses that Reed had armed himself with the instructions or the knowledge of his employer. The undisputed evidence of Captain Dan Stephens of the Rome police department is to the effect that Fred B. Reed fired the first shot, and that that shot entered the chest of Herman Ingram, and that Captain Stephens was nearby when the shot was fired. The director therefore finds as a matter of fact that Fred B. Reed did not receive an accidental injury

arising out of and in the course of his employment, but died from a pistol wound inflicted by a third party; and in accordance with § 114-102 (§ 2 d), and § 114-105 (§ 14), of the workmen's compensation act, this case is not compensable."

An injury which is compensable under our workmen's compensation act is defined by that act to "mean only injury by accident arising out of and in the course of the employment, and shall not . . include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee." Code, § 114-102. It is further provided in that act that "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, . . including intentionally self-inflicted injury, or growing out of his attempt to injure another." § 114-105. In construing these sections the Supreme Court, in *Pinkerton National Detective Agency* v. *Walker,* 157 *Ga.* 548 (122 S. E. 202, 35 A. L. R. 557), said: "The fact that the injury is the result of the wilful or criminal assault of a third person, and the employee is guilty of no misconduct, does not prevent the killing from being accidental within the meaning of the workmen's compensation act." See also 1 Schneider's Workmen's Compensation Law (2d ed.), § 293, and cit. "An injury caused by the attack of a third person may be accidental so far as the injured person is concerned." 1 Honnold's Workmen's Compensation Law, § 87; *Scott* v. *Travelers Ins. Co.,* 49 *Ga. App.* 157 (174 S. E. 629). The evidence adduced in this case was sufficient to have warranted a finding that the injury was an accidental injury causally connected with the employment of the deceased. We think that the finding of the commissioner that the deceased "at the time of his death had not reached his place of employment" would not be a sufficient reason to prevent compensation; for the evidence was undisputed that the killing took place immediately in front of the plant where he had been transported by his employer to go to work. See *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256 (175 S. E. 577). The finding that "the undisputed evidence of Captain Dan Stephens . . is to the effect that Fred B. Reed fired the first shot," is made the basis for the finding that Reed "did not receive an accidental injury arising out of and in the course of his employment." We do not think the evidence sufficient to

support a finding that the animus of the crowd of strikers did not arise out of the employment and was directed towards the deceased and the other five men alone for personal reasons disconnected with their employment, nor was it their intention to harm these five alone; and a finding to that effect would not have been warranted by the evidence. We do think that a finding that Reed himself began the actual difficulty, and used more force than was necessary to repel what was a seeming attempt to cause him injury, was warranted. Such a conclusion from the facts in evidence was a matter for determination by the commissioner, as it would have been for a jury if Reed had not been killed and was being prosecuted for the shooting of Ingram. Such testimony would have supported a verdict either way; and that being the case, it is the established law of this State that the finding of the industrial commission is final. "Under the provisions of the workmen's compensation act, a claimant is not entitled to compensation where the injury to the deceased employee was the result of a fight between him and a fellow employee in which the deceased employee was the aggressor. In such a case the injury was not an accident arising out of the employment, within the meaning of the act." *Fulton Bag & Cotton Mills* v. *Haynie,* 43 *Ga. App.* 579 (159 S. E. 781). We can not say that there was no evidence to support such a conclusion, irrespective of what might have been our conclusion had we been a juror or a commissioner. Taking this view of the case, it was error for the superior court to set aside this award and make a different award.

*Judgment reversed. Broyles, C. J., concurs.*

MacIntyre, J., dissenting. The mere fact that A, an employee, was having a difficulty with B, would not justify C's intervening in the row and killing A where there was no relationship between them. That part of the workmen's compensation act as embodied in the Code, § 114-105, says, in part: "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, including intentional self-inflicted injury, or growing out of his attempt to injure another." The designated specific act in the instant case which constitutes wilful misconduct is the injury of or the attempt to injure another. I think the word "another" as used in the act should be construed to refer to the person or persons whom the employee seek-

ing compensation was attempting to injure. In order to conclude compensation, the evidence should disclose *a connection* between the act of wilful misconduct on the part of the employee seeking compensation, and the person who injured him. In this case there is no evidence that the deceased A was the aggressor toward C, nor was A guilty of wilful misconduct toward C, the person who killed A. And even if we concede the commissioner was authorized to find, under the conflicting evidence, that A was guilty of misconduct toward B, yet C, a third person against whom no wilful misconduct was directed, and against whom no injury had been done or attempted, had no right to punish A by killing him for a wrong done to B. The misconduct, not the conduct, must be wilful. If the acts of A were such as to amount to misconduct and were wilful as to B, these acts, even if they amounted to misconduct when directed against B, in that he intended to shoot B without sufficient provocation, yet the shooting without sufficient provocation was not wilful (intentional) in so far as C was concerned. No injury of or intent to injure C was shown. A was killed while attempting to report for work at the very gates of his employer. Under the facts in this case, I think his dependents are entitled to compensation, and that the judgment of the superior court in so finding was correct, and that the judgment should be affirmed.