A99A2447. SEWELL et al. v. HULL/STOREY DEVELOPMENT, LLC et al.
(526 SE2d 878)

JOHNSON, Chief Judge.

Norma Sewell sued Hull/Storey Development, LLC, James Hull, Karen Hull, Mason McKnight III, and William McKnight (collectively "appellees") for personal injuries alleged to have occurred when she was robbed while working for General Cinemas as manager of one of its theaters. Her husband also sued for loss of consortium. The trial court granted the appellees' motion for summary judgment, and the Sewells appeal. For reasons which follow, we affirm.

The record shows that Norma Sewell worked as the manager of a theater owned by General Cinemas. The theater was located in a shopping center owned, operated, managed, leased, maintained and/or controlled by James Hull, Karen Hull, Mason McKnight III, and William McKnight through Hull/Storey Development, a corporation. On the day of the incident, Sewell arrived at work in the morning to perform some office work before the theater opened. A fellow employee was there and assisted her until he left to attend school classes. The fellow employee left the theater through the front doors, which lock when the doors are closed. After the fellow employee left, robbers appeared in the theater, bound and gagged Sewell, and locked her in a closet. Sewell was discovered by co-workers hours later.

According to the Sewells, the appellees owed a contractual duty to provide security under the terms of the lease. They further argue that even if the appellees did not owe a contractual duty under the lease, they voluntarily undertook the duty to provide security and were negligent in carrying out that duty. On appeal of the grant of summary judgment, this court applies a de novo review of the evi-

dence to determine whether any question of material fact exists. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A defendant meets this burden by

> showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . All of the other disputes of fact are rendered immaterial.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

1. The Sewells first contend that the trial court erred in granting summary judgment to the appellees because questions of material fact exist regarding whether the appellees owed a duty to provide security services inside the General Cinemas theater. We disagree.

The lease at issue obligated the lessor to construct a building for General Cinemas on 9.6 acres. The building to be constructed and the acreage were referred to as the "demised property." This property, along with two other tracts, were collectively referred to as the "shopping center." According to the lease, the term "shopping center" means "the entire development, including any and all proposed structures, parking facilities, common facilities and the like to be built on the land. . . ."

Article V, entitled "Outside Facilities and Parking Area," sets forth the duties and obligations of the landlord. Section 4 of this article requires the landlord to operate, maintain and repair the common areas of the shopping center. This section states that "landlord's common area costs" mean "all costs of operating and maintaining the common areas of the H.A.I. Tract and the demised premises in a manner deemed by Landlord appropriate for the best interests of Tenants and other occupants of the Shopping Center." Included among the costs and expenses constituting common area costs were, at the option of the landlord, costs and expenses of police protection and security and security patrol.

The Sewells claim that this portion of the lease should be read as requiring the landlord to provide security and police protection for common areas of the H.A.I. Tract and for *all* of the demised property, including the theater building. We disagree.

Construction and interpretation of a contract are matters of law for the court. OCGA § 13-2-1. If the court finds that an ambiguity exists, it is the court's duty to resolve that ambiguity by applying the pertinent rules of contract construction. See OCGA § 13-2-2. A con-

tract should be construed by the court where the language is undisputed, but the meaning of that language is in dispute:

> If the contract does not require disentanglement of the language by a jury, i.e., the words used are plain and clear in their common usage, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties.

(Citations omitted.) *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.*, 182 Ga. App. 671, 673 (357 SE2d 100) (1987). Issues of contract construction are submitted to a jury only when there appears to be an ambiguity in the contract which cannot be resolved by the court's application of the statutory rules of construction. See *Gill v. B & R Intl.*, 234 Ga. App. 528, 530 (1) (a) (507 SE2d 477) (1998).

At issue in the present case is what the parties meant by "common areas of the H.A.I. Tract and the demised premises." In construing a contract, courts must give words their usual and common meaning. OCGA § 13-2-2 (2). In addition, the law favors a construction of the language which will uphold the contract as a whole, and the entire contract should be looked to in arriving at the construction of any part. OCGA § 13-2-2 (4).

In the present case, it is clear from a reading of the entire lease that the parties intended the landlord's duties to be limited to the common areas of the demised property, not the entirety of the demised property. The portion of the lease at issue is specifically entitled "Outside Facilities and Parking Area." In addition, subsection 4 of this section begins with the sentence: "Landlord will operate, maintain and repair the common areas of the Shopping Center." It then defines and describes common area costs. The only logical interpretation of the language given the entire lease is that the landlord was responsible for providing security and police protection for the common areas of the H.A.I. Tract and the common areas of the demised premises.

In addition, it is important to note that General Cinemas provided security inside the theater building and to escort employees while making bank deposits. General Cinemas never had any discussions with the landlord about providing security inside the building. In addition, when Hull/Storey Development employed a security service following this incident, the security service was for outside only. General Cinemas did not request or demand security service for inside the theater building. General Cinemas' conduct and actions in providing its own security inside the theater building demonstrates General Cinemas' interpretation of the lease and should be heavily relied upon by the court. See *Eickhoff v. Eickhoff*, 263 Ga. 498, 505 (6)

(435 SE2d 914) (1993); *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962). The trial court did not err in finding that the appellees did not owe a duty to provide security or police protection inside the theater building under the lease at issue.

2. The Sewells next contend that even if the appellees did not owe a duty to provide security and police protection under the lease, they voluntarily assumed this duty and failed to carry out those obligations. We disagree.

In late January 1994, an employee of one of the other shopping center's tenants was shot during a robbery. Hull/Storey Development sent a memo to the shopping center's tenants asking if they wanted security services for the shopping center:

> The recent shooting incident at Funsations has heightened everyone's awareness of the need for a safe work environment. At the request of one of our tenants, I am hereby surveying your group to determine if there is sufficient interest in providing security services at this center. The idea would be to contract with a local security firm to provide a uniformed officer in the area during certain hours. We could include this as a common area expense and bill each tenant proportionately. If your response is positive toward this approach, I will proceed by contacting some security agencies in the area and getting quotes on this service. Please call our office . . . to register your response. Also, if you wish to have security, tell us which hours are most critical for your business.

Sewell responded immediately, expressing her desire for security. The two other tenants also asked for security.

During the six-week period between this letter and Norma Sewell's attack, the appellees met at least weekly to discuss the issue of security. In addition, Sewell had regular conversations with Hull/Storey Development regarding her request for security. However, there was a dispute over the type of guard necessary. The lease gave the landlord sole discretion regarding the type of security to provide for the shopping center, and the landlord wanted to use unarmed guards. The tenants, however, wanted armed, off-duty deputies. In an attempt to comply with the wishes of the tenants, the appellees were internally debating and seeking legal opinions on the issue of workers' compensation insurance for off-duty deputies.

Clearly, the January 31 letter does not show that the appellees undertook a duty to provide security for the shopping center. This letter was merely an inquiry as to whether the tenants wanted security. After the tenants replied affirmatively, the appellees then sought

quotes and legal opinions in an attempt to determine the best type of security to provide for the shopping center. While it is unfortunate that Norma Sewell was robbed during the six-week period that security issues were being discussed, there is no evidence in the record that the appellees undertook a duty to provide security for the shopping center prior to the attack on Sewell.

Contrary to the Sewells' arguments, *Cooperwood v. Auld*, 175 Ga. App. 694 (334 SE2d 22) (1985), is not controlling in this case. In *Cooperwood*, an employee admitted to the victim that he saw the assailant attempting to break into her apartment the morning she was raped but did not report his observations. In addition, there was some evidence that the employee's duties included "looking out for the safety of the apartment premises and the residents." Id. No such duties or observations are present in this case.

When a landlord acts to provide security, it must do so in a non-negligent manner. See *Cooperwood*, supra. Here, however, the appellees were still researching their options regarding security and had not yet undertaken the duty to provide security to the shopping center. They cannot be held liable for any breach of a duty they had not undertaken or for negligently performing a duty they had not undertaken. The trial court did not err in granting the appellees' motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 8, 1999.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Joseph W. Padgett*, for appellants.

*Dye, Tucker, Everitt, Wheale & Long, A. Rowland Dye*, for appellees.