A01A0007. AMERICAN GLOBAL DEVELOPMENT GROUP, INC. et al. v. SASSER & WEATHERFORD, INC.

(548 SE2d 465)

RUFFIN, Judge.

Real estate broker Sasser & Weatherford, Inc. ("S&W") sued American Global Development Group, Inc. ("American Global") and Luckie Holdings, LLC ("Luckie"), alleging that the defendants breached their contract with S&W to pay the latter a finder's fee. Following trial, a jury found both American Global and Luckie liable to S&W for the fee. American Global and Luckie appeal, asserting that there was insufficient evidence to support the jury's verdicts and that the trial court therefore erred in denying their motions for directed verdict and for judgment notwithstanding the verdict. For reasons that follow, we affirm the court's rulings concerning American Global, but reverse the rulings concerning Luckie.

On appeal from a trial court's denial of motions for directed verdict and judgment n.o.v.,

> we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom[,] demands a certain verdict. Thus, a judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. If the evidence is conflicting, or if insufficient evidence exists to make a one-way verdict proper, judgment n.o.v. should not be granted. Further, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict.[1]

---

[1] (Citation and punctuation omitted.) *Dunaway v. Parker*, 215 Ga. App. 841, 849 (4) (453 SE2d 43) (1994).

Construed in this light, the evidence at trial showed that American Global was incorporated on August 31, 1994, for the purpose of developing hotels in Atlanta and China. American Global's president was Steven Hsieh, and Richard Patton was its vice-president, secretary, and a director on the company's board. American Global had three investors, one of which was the Parkwood Group ("Parkwood"). Patton was also president of Parkwood. In addition to investing in projects with American Global, Parkwood developed hotels with other investors.

In August or September 1994, Patton contacted S&W's principal, Jesse Sasser, requesting that Sasser "look around for some hotel sites" in the vicinity of the Georgia Institute of Technology and Coca Cola corporate headquarters. Patton explained to Sasser that he had "some foreign investors that may be interested in doing a hotel project." It was a common practice for Sasser not to have a written fee agreement in place at this early stage because he did not like to spend time negotiating contracts until he ensured there was some chance of finding a potential site and that a purchase would likely follow.

Sasser looked at a number of parcels, and by the end of February 1995, he found one that he thought would be suitable. After Sasser discovered who owned the property, he contacted Patton to discuss the property and a fee arrangement. Because Patton did not need a broker to negotiate purchasing the property, he asked whether Sasser would "be willing to take a [$25,000] fee in lieu of a commission," which would have been approximately $75,000, and Sasser agreed.

Parkwood decided to proceed with the project and approached both Marriott and Holiday Inn about putting a hotel on the site. Eventually, Parkwood struck a deal with Holiday Inn and began meeting with potential investors for the project, including American Global. After studying Parkwood's proposal, American Global agreed to develop the hotel. On November 8, 1995, American Global created a separate entity, Luckie, to purchase the property and construct the hotel. It appears that the project went as planned, and the hotel was built.

Meanwhile, on November 14, 1995, and July 17, 1996, Sasser sent letters to Patton at Parkwood memorializing S&W's fee agreement for finding the hotel site. The second letter stated that it "will memorialize our agreement that in the event you, the Parkwood Group or any of its members, partners or affiliates purchase, lease or enter any venture involving the above-referenced property, you or Parkwood will pay to [S&W] a fee of $25,000 for services rendered." The letter included a signature line for "Richard Patton" to sign in agreement. After receiving the letter, Patton crossed out the refer-

ences to "Parkwood Group" and "you or Parkwood" and wrote in their place "American Global Development Group, Inc." and "AGDG." In addition, on the signature line, Patton added under his name the designations "Senior Vice President, American Global Development Group, Inc." and "member, Luckie Holdings, LLC." Patton testified that prior to closing on the land purchase, he informed American Global's president, Hsieh, about S&W's fee. Patton also testified that because the finder's fee was part of the land cost, "it has always been in the budget to pay [the] fee." Accordingly, Patton returned the letter to S&W with a cover letter explaining the changes. Patton testified that he similarly amended other documents he executed with Holiday Inn before American Global and Luckie became involved in the project.

Although American Global presented evidence that the company required Hsieh to approve all contracts, Patton stated that he was not told about the policy, and he repeatedly and unequivocally testified that he was authorized to sign S&W's agreement letter on behalf of American Global. Indeed, according to Patton, during the development process, he signed a lot of documents "bind[ing] the company."

Several documents admitted into evidence support Patton's assertion that he was authorized to sign the S&W agreement on behalf of American Global. For instance, American Global's bylaws provided that the company's board of directors could authorize any officer to enter into contracts, and, in a resolution, the board gave American Global's officers broad authority to execute agreements associated with financing for the project. Specifically, the resolution provided that the execution of any such document or instrument "by any officer of the Corporation shall be fully binding on the Corporation without [attestation by another officer]." In addition, S&W presented numerous contracts executed by Patton as an agent for Luckie and American Global, including loan agreements, a licensing agreement, construction agreements, a letter of intent, a development agreement between American Global and Luckie, a lease, and an amendment to the purchase agreement. The signature lines on some of these documents reveal that Patton executed them in his capacity as the senior vice-president of American Global and as a member or manager of Luckie. Based on this evidence, the jury returned verdicts finding American Global and Luckie liable to S&W for $25,000.

1. Appellants assert that the trial court erred in denying Luckie's motions for directed verdict and judgment n.o.v. because there is no evidence that Luckie was a party to the contract. We agree.

Aside from S&W's bare allegation in its complaint that "Defendants contracted to pay S&W for services," there is nothing of record indicating that Luckie agreed with S&W to pay the finder's fee or

that S&W looked to Luckie for payment. In fact, S&W repeatedly alleges in the complaint that the agreement was between itself and American Global. Significantly, the only demand letter in the record is from S&W to American Global, without any mention of Luckie. Most importantly, however, the undisputed evidence shows that when Patton changed S&W's agreement letter, he named American Global as the sole contracting entity. Accordingly, because there was no evidence that Luckie was ever a party to the agreement, the trial court erred in failing to direct a verdict for Luckie.[2]

2. American Global asserts that the trial court erred in refusing to grant it a directed verdict or judgment n.o.v. because there was no evidence that Patton had actual or apparent authority to bind the company. We disagree.

Evidence discussed above revealed that Patton, as American Global's vice-president and secretary, had broad authority to enter contracts on behalf of the company. These contracts related not only to financing, but also to purchasing the land, licensing, and construction. Patton testified extensively about his authority to bind American Global and repeatedly stated that he had authority to enter the agreement with S&W on American Global's behalf.

As a general rule, an agent can act "within the authority granted to him, reasonably interpreted."[3] Where, as here, the parties dispute the extent of that authority, a jury must resolve the issue.[4] Accordingly, because there was evidence of Patton's authority, the trial court properly allowed the jury to resolve this issue.[5]

3. American Global asserts that the contract was unenforceable because there was "no meeting of the minds . . . as to the parties to the contract and to the purported contingency as to when it becomes due." We disagree.

Although there may have been some initial uncertainty about which entity would be liable for the finder's fee, "[a] contract which is originally and inherently too indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words, or conduct of the parties."[6] Evidence at trial showed that Patton, who was acting on behalf of American Global, clarified that American

---

[2] See *B & C Tire & Battery v. Cooper Tire &c. Co.*, 212 Ga. App. 228, 230 (1) (441 SE2d 468) (1994) (ruling that directed verdict was appropriate where contract was plain, unambiguous, and subject to only one reasonable interpretation).

[3] OCGA § 10-6-21.

[4] See *Allen & Bean, Inc. v. American Bankers Ins. Co.*, 153 Ga. App. 617, 619 (266 SE2d 295) (1980).

[5] See id.; see also *Southtrust Bank v. Parker*, 226 Ga. App. 292, 294-295 (1) (486 SE2d 402) (1997).

[6] (Citation and punctuation omitted.) *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 795 (1) (432 SE2d 238) (1993).

Global agreed to pay the $25,000 for S&W's performance under the contract. Thus, there was evidence from which the jury could identify the parties to the contract.

4. American Global also asserts that, even if there was a binding contract, the trial court erred in failing to direct a verdict in its favor because there is no evidence that "Patton, Parkwood, or a member, partner or affiliate of Parkwood" purchased the property. We have already concluded, however, that the evidence permitted the jury to find that Patton was authorized to enter the contract on behalf of American Global, and the contract signed by Patton, as vice-president of American Global, substituted that company for Parkwood. Thus, the jury was not required to find that a member, partner, or affiliate of Parkwood purchased the property.

5. To the extent that American Global asserts that the contract was unenforceable because it did not sufficiently describe the conditions under which American Global would be required to pay the fee, we disagree. The agreement letter modified by Patton clearly stated that American Global would be required to pay the fee *"in the event* that [Patton], [American Global] or any of its members, partners or affiliates purchase, lease or enter any venture involving the [property]."[7] Thus, this argument is without merit.

6. Finally, American Global asserts that it was entitled to a directed verdict and judgment n.o.v. because the evidence showed that Patton's assignment of the debt from Parkwood to American Global constituted an illegal conflict of interest transaction by Patton. However, that portion of the transcript cited by American Global does not support its assertion that this error was preserved for consideration on appeal. Instead, the cited transcript pages show that American Global merely asserted the conflict of interest argument during the charge conference while discussing one of S&W's requested instructions. Thus, "[e]rror, if any, was not preserved for our review."[8]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2001.

*Richard K. O'Donnell, G. Brian Raley,* for appellants.
*Donna W. Howell, Dennis K. Calhoun,* for appellee.

---

[7] (Emphasis supplied.)
[8] *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 347 (2) (b) (537 SE2d 397) (2000).