A02A1858. GULF STATES UNDERWRITERS OF LOUISIANA, INC. et al. v. BENNETT.
A02A1859. THOMAS v. BENNETT.
(580 SE2d 550)

RUFFIN, Presiding Judge.

Jimmy Bennett filed a workers' compensation claim against his employer, Northwest Georgia Personal Care Home ("Northwest Georgia"), Gulf States Underwriters of Louisiana, Inc./National Association of Employers ("Gulf States"),[1] and A. B. Thomas, the insurance agent that sold Northwest Georgia the policy. Following a hearing, the administrative law judge ("ALJ") held Gulf States and Thomas liable for payment of workers' compensation benefits and assessed attorney fees. The award was affirmed, and both Gulf States and Thomas filed applications for discretionary appeal. In Case No. A02A1858, we granted Gulf States' application; and in Case No. A02A1859, we granted Thomas' application. For reasons that follow, we reverse.

The facts in this case are essentially undisputed. In 1995, Joann Blevins, the owner of Northwest Georgia, sought workers' compensation insurance, but had difficulty obtaining insurance due to the expense. At some point, Blevins met with Thomas, an insurance agent representing Gulf States. According to Blevins, Thomas told her that "he could help [her] with [obtaining insurance], that he had something just like workers' comp," but less expensive. Thomas then sold Blevins an "Employers Blanket Accident Group Policy" that expressly provided that it was *not* a workers' compensation policy. The policy was issued by American Pioneer Life Insurance Company and administered by Gulf States.

---

[1] The relationship between Gulf States Underwriters of Louisiana and National Association of Employers is not entirely clear. It appears that the companies are closely related, and the State Board of Workers' Compensation essentially treated them as the same entity. For the sake of clarity, we refer to the two entities collectively as "Gulf States."

Although purportedly not a workers' compensation policy, the policy at issue shared many characteristics of a workers' compensation policy. Specifically, it insured against "occupational injuries," which it defined as "accidental injury occurring during the usual and customary performance of duties required by the insured person's normal work." The policy paid, among other amounts, total disability benefits up to $250 per week for a maximum of 60 weeks and medical expenses up to $5,000 per accident.

On April 6, 1998, Bennett, a Northwest Georgia employee, sustained a work injury. Bennett began receiving checks from Gulf States in the amount of $250 per week. Bennett told Blevins he should be receiving $325 per week, and, according to Bennett, Blevins made "up the difference." Six weeks after the injury, Bennett returned to work. In 1999, however, he stopped working full time as a result of his injury. Bennett then filed a workers' compensation claim, seeking payment of temporary partial disability benefits, unpaid medical expenses, and assessed attorney fees.

The ALJ scheduled a hearing on Bennett's claim for October 11, 2000. The notice of hearing lists Gulf States and Thomas as "insurers" for the April 6, 1998 accident. Prior to the hearing, E. B. Sanders, president of Gulf States, submitted an affidavit to the State Board, setting forth that Gulf States was not an insurance company, but an "Administrator[ ] for American Pioneer Life Insurance Company." Sanders further averred that the policy was not a workers' compensation policy, and that Blevins "acknowledged" such. Sanders attached to his affidavit a certification signed by Blevins that stated that she "fully underst[ood] that this is not Workmen's Compensation insurance as American Pioneer Life Insurance Company is not authorized to, and does not write that type of coverage." Also before the hearing, Thomas wrote letters clarifying that he was not an insurer, but merely the agent that had sold the policy to Blevins. Although neither Gulf States nor Thomas was present or represented at the hearing, copies of Sanders' affidavit and Thomas' letters were admitted into evidence.

Following the hearing, the ALJ held Gulf States and Thomas liable for payment of income benefits, medical expenses, and assessed attorney fees.[2] The ALJ noted that the policy "indicate[d] on its face and on the application for such insurance that such was not a policy of workers' compensation insurance." The ALJ nonetheless concluded that, "[i]n order to provide justice to Northwest Georgia and Bennett, I find that the policy of insurance issued by American Pioneer Life

---

[2] The ALJ also held Northwest Georgia liable for payment of income and medical benefits.

Insurance Company was a substitute system of [workers' compensation] insurance" in accordance with OCGA § 34-9-14.

Gulf States and Thomas appealed the ALJ's award to the appellate division. In its order, the appellate division reasoned that it could not consider Sanders' affidavit or Thomas' letters, which it deemed hearsay. The appellate division then questioned whether Gulf States and Thomas "waived their defenses" by failing to attend the hearing. Finally, the appellate division concluded that the ALJ did not err in construing the policy as an alternative workers' compensation policy and in finding Gulf States and Thomas liable. The superior court subsequently affirmed that decision, and these appeals ensued.

### Case No. A02A1859[3]

1. On appeal, Thomas argues that the State Board lacked subject matter jurisdiction to entertain the claim against him. According to Thomas, "[a]ny damages awarded against [him], a non-insurer by the Administrative Law Judge's own findings, would amount to damages" for an alleged fraud. We agree.

"The State Board of Workmen's Compensation is not a court, but is an administrative body with only those powers and duties given it by statute."[4] As such, it "has no jurisdiction to declare the rights of the parties as a superior court."[5] Rather, the limited purpose of the Workers' Compensation Act is "to provide a complete and exclusive system and procedure for the resolution of disputes between *employers* and *employees* who are subject to this chapter."[6]

Here, the evidence is undisputed that Thomas is an insurance agent. Evidently, the ALJ determined that, although neither an employer nor insurer, Thomas should be held liable for perpetrating a fraud against Blevins, leading her to believe she had fulfilled her legal obligation to obtain workers' compensation insurance.[7] However, this Court is unaware of any statutory authority that would permit the State Board of Workers' Compensation to adjudicate a fraud claim and assess damages.[8]

We are unpersuaded by Bennett's contention that this is not a fraud case as we can ascertain no other basis upon which Thomas

---

[3] For the sake of clarity, we analyze the two cases in reverse order.
[4] *Nat. Biscuit Co. v. Martin*, 225 Ga. 198, 199 (167 SE2d 140) (1969).
[5] *Fireman's Fund Ins. Co. v. Crowder*, 123 Ga. App. 469, 476 (181 SE2d 530) (1971).
[6] (Emphasis supplied.) OCGA § 34-9-23.
[7] See OCGA §§ 34-9-120; 34-9-121 (a).
[8] See *Cline v. Aetna Cas. &c. Co.*, 137 Ga. App. 76, 77 (1) (223 SE2d 14) (1975) (predecessor agency of State Board lacks subject matter jurisdiction over claim in which damages sought for alleged fraud).

might have been held liable.[9] The Workers' Compensation Act clearly holds *employers* liable for payment of benefits.[10] More importantly, the Act provides no legal basis for an employee to seek payment of benefits from an insurance agent. According to Bennett, Thomas is liable under OCGA § 33-23-41, which imposes personal liability on an insurance agent in limited circumstances. However, this Code section is not in the Workers' Compensation Act, but the Georgia Insurance Code.[11] Assuming, for the sake of argument, that Thomas may be held liable under a provision of the Georgia Insurance Code, it does not follow that the State Board of Workers' Compensation is the proper forum for adjudicating the issue.[12] Thus, the State Board of Workers' Compensation erred in concluding that it had jurisdiction over this matter, and we reverse.

### Case No. A02A1858

2. Like Thomas, Gulf States argues that the State Board lacked subject matter jurisdiction. According to Gulf States, the State Board has no jurisdiction over a servicing agent that administers a nonworkers' compensation policy. It is clear that the State Board has jurisdiction over servicing agents for workers' compensation policies. Thus, Gulf States' argument turns on its contention that the policy issued was not for workers' compensation.

The Workers' Compensation Act is to be liberally construed to protect both employees and employers.[13] And "[w]e are to interpret the Act, if its language will permit, so as not to deny its benefits to either employee or employer[s]."[14] Pursuant to OCGA § 34-9-125, the Act encompasses "[e]very policy insuring the payment of compensation provided for in this article or insuring against liability for payment of such compensation."

Under the rules of statutory construction, " '[w]hen a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it but must construe it according to its terms.' "[15] The policy at issue expressly states that it is not a workers' compensation policy. The

---

[9] Although Bennett suggests that the ALJ found, as a matter of fact, that Thomas was an insurer, this suggestion is not supported by the record. Blevins' testimony makes clear that Thomas is an insurance agent, and the ALJ acknowledged as much in the award.

[10] See OCGA §§ 34-9-120; 34-9-121 (a).

[11] See OCGA § 33-1-1.

[12] See *Cline*, supra.

[13] See *DeKalb Collision Center v. Foster*, 254 Ga. App. 477, 483 (1) (562 SE2d 740) (2002).

[14] Id.

[15] *Mickens v. Western Probation Detention Center*, 244 Ga. App. 268, 270 (1) (534 SE2d 927) (2000).

policy nonetheless provided some coverage for Northwest Georgia for benefits it was obligated to pay to injured workers in accordance with the Act. Thus, the policy served to insure against liability for payment of benefits, and, thus, it comes under the purview of the State Board's authority.[16] It follows that the State Board has subject matter jurisdiction to address the scope of the policy.

3. In a separate enumeration of error, Gulf States argues that the ALJ erred in finding "that the policy issued to Northwest Georgia . . . was a . . . substitute for a workers' compensation policy." Bennett, however, asserts that Gulf States waived this argument by failing to appear at the hearing. Accordingly, as a threshold matter, we must address whether this argument has been waived.[17]

It is well established that an appellate court will generally decline to address issues presented for the first time on appeal.[18] Fairness requires that the parties and the trial court have an opportunity to address issues before the appellate court does so.[19] In this case, Gulf States did not attend the hearing before the ALJ. It does not automatically follow, however, that Gulf States' arguments are being raised for the first time on appeal. Gulf States submitted an affidavit establishing its position that the policy did not provide workers' compensation coverage, which framed one of the issues tried below.[20] Accordingly, we find no bar to our addressing whether the ALJ erred in concluding the policy was a substitute workers' compensation policy.

"Construction and interpretation of a contract are matters of law for the court."[21] Moreover, " '[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy.' "[22] The policy at issue unequivocally states that it is *not* a workers' compensation policy, and it provides substantially less coverage than the

---

[16] See OCGA § 34-9-125.

[17] Bennett cites the case of *Baugh-Carroll v. Hosp. Auth. of Randolph County*, 248 Ga. App. 591 (545 SE2d 690) (2001), for the proposition that Gulf States waived its argument on appeal. However, that case involved a defendant's failure to timely assert an affirmative defense, which is not at issue here. Id. at 593-594 (1). Rather, the issue here is whether Gulf States' argument has been preserved for appellate review.

[18] See *Johnson v. First Union Nat. Bank*, 255 Ga. App. 819, 820 (1) (567 SE2d 44) (2002).

[19] See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

[20] The affidavit was admitted at the hearing, but the appellate division concluded that it was hearsay that could not be considered. Although hearsay may not be considered for the truth of the matter asserted, it may nonetheless be admissible for some other purpose. See *Hubert v. Falconer*, 248 Ga. App. 243, 244 (2) (545 SE2d 680) (2001) (hearsay properly admitted to explain conduct).

[21] *Sewell v. Hull/Storey Dev.*, 241 Ga. App. 365, 366 (1) (526 SE2d 878) (1999).

[22] *Cox v. Southern Guaranty Ins. Co.*, 254 Ga. App. 776, 777 (1) (563 SE2d 882) (2002).

Workers' Compensation Act requires.[23] Where, as here, the language of a policy is unambiguous, a court has no legal authority to disregard it.[24] Accordingly, inasmuch as the trial court concluded that the policy was a workers' compensation policy, it erred. The fact that Blevins mistakenly believed she had obtained workers' compensation insurance does not alter the result, as "[a]n insured who can read is required to read the policy and is presumed to have understood its contents."[25]

Furthermore, the policy does not constitute a substitute workers' compensation policy. "The Workers' Compensation Act constitutes a complete code of laws upon the subject, and the recoverability of workers' compensation benefits is strictly a matter of statutory construction, because there is no common law right to such benefits."[26] OCGA § 34-9-14 provides, in pertinent part, that a substitute system of workers' compensation must be approved by the State Board of Workers' Compensation and must provide benefits at least equal to those required by the Workers' Compensation Act. As noted by the ALJ, there is no evidence that the policy issued to Northwest Georgia was approved by the State Board. More importantly, the policy does not provide benefits equal to those required under the Act. It follows that the ALJ erred in concluding that the policy constitutes a substitute workers' compensation policy.

In view of this holding, we need not address Gulf States' remaining allegations of error.

*Judgments reversed. Adams, J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I concur fully in Division 1 of this opinion, concerning Case No. A02A1859, and in Division 2 of the opinion concerning Case No. A02A1858, I cannot concur in all that is said in Division 3 of the opinion. Nevertheless, because I believe the opinion reaches the result required under our law, I must concur also in the judgment.

---

[23] For example, the Workers' Compensation Act pays total disability income benefits for a noncatastrophic injury for a maximum of 400 weeks. See OCGA § 34-9-261. The policy, on the other hand, provides income benefits for a maximum of 60 weeks, regardless of whether the injury is catastrophic.

[24] See *Cotton States Mut. Ins. Co. v. Hipps*, 224 Ga. App. 756, 757 (481 SE2d 876) (1997) (physical precedent only).

[25] (Punctuation omitted.) *Cox*, supra.

[26] (Punctuation and footnotes omitted.) *Mickens*, supra at 269-270.

DECIDED FEBRUARY 28, 2003 —
RECONSIDERATION DENIED APRIL 3, 2003 —

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert L. Berry, Jr., Kristy L. Cordle*, for appellants (case no. A02A1858).
*Michael T. Thornton*, for appellant (case no. A02A1859).
*William L. Lundy, Jr.*, for appellee.