[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2010
JOHN P. LEY
ACTING CLERK

No. 09-13382
Non-Argument Calendar

_____

D. C. Docket No. 08-02236-CV-WSD-1

AA ACTION, INC.,
d.b.a. Candler-Smith Historic
Warehouse District,

                                        Plaintiff-Appellant,

versus

TRANSCONTINENTAL INSURANCE COMPANY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 6, 2010)

Before BLACK, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This case is an insurance dispute arising from a wrongful death settlement reached after a fire killed three individuals in a storage unit managed by Plaintiff AA Action, Inc. ("AA Action"). The owner of the storage unit, Candler Warehouses, LLC, had a commercial general liability insurance policy from Admiral Insurance Company ("Admiral Policy"). The Admiral Policy indemnified Candler and AA Action for $1 million of the $3.25 million settlement amount. AA Action is an insured under a Transcontinental insurance policy providing business liability coverage and umbrella coverage. Pursuant to that policy, AA Action claims to be entitled to indemnity from Transcontinental for additional amounts paid in the settlement. Transcontinental claims that it is not responsible for defense and indemnity arising from the settlement because the location where the fire occurred was not one of the "designated premises" covered by the Transcontinental Policy. The district court granted Transcontinental's motion for summary judgment, holding that the insurance contract is not ambiguous, and that the terms do not provide coverage for the damage AA Action alleges. We agree.

"We review the grant of summary judgment de novo, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-movant." Waters v. Miller, 564 F.3d 1355, 1356 (11th Cir. 2009). "What a contract provision means, or whether it is ambiguous, are questions of law we

2

review de novo." Allapattah Servs. Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003).

We apply Georgia contract law to determine the scope of coverage under an insurance policy. See Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1444 (11th Cir. 1991). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." Gulf States Underwriters of La., Inc. v. Bennett, 260 Ga. App. 699, 703, 580 S.E.2d 550 (2003). "Any reasonable doubt as to uncertain language will be resolved against the insurer." Nationwide Mut. Fire Ins. Co. v. Collins, 136 Ga. App. 671, 676, 222 S.E.2d 828 (1975).

AA Action advances two bases for its argument that it is entitled to coverage under its Transcontinental Insurance Policy for the wrongful death settlement. First, it argues that the Limitation of Coverage to designated Premises or Project Endorsement in the Businessowners Liability Coverage Policy is ambiguous and must be construed in favor of AA Action. Second, it argues that the Umbrella Coverage Endorsement is ambiguous and must be construed in favor of AA Action.

The Certificate of Property and Liability Insurance in the Businessowners

Liability Coverage Policy specifies that the locations covered by the Policy are contained in Supplemental Certificate pages. The Policy contains five such pages, each of which lists a separate address.[1] Although it is somewhat difficult to untangle the Policy given the number of distinct forms and the roundabout manner in which the forms refer to one another, there is no doubt that the Certificate of Property and Liability Insurance and the Supplemental Certificate pages are parts of the Transcontinental Policy. Under the rules of contract construction, we must read the Policy as a whole and construe it "in a manner that gives effect to all of the contractual terms." Boardman Petroleum Inc., v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998). In contravention of this rule, AA Action's interpretation of the contract would render meaningless the Supplemental Certificate pages referred to by the Certificate of Property and Liability Insurance. Read in conjunction with the rest of the Policy, the Certificate of Property and Liability Insurance and Supplemental Certificate pages clearly limit coverage to the five listed locations. None of these is 675 Metropolitan Pkwy #5036, Atlanta, GA 30360, the location where the fire occurred.[2] Therefore, we agree with the

---

[1]   Three of these pages are marked "DELETED."

[2]   AA Action also argues that the policy shows its mailing address as 675 Metropolitan Pkwy #D-1000. AA Action argues that we should infer that the policy is at least ambiguous as to the coverage of that address. Even if there were ambiguity as to coverage of that address, the fire occurred at a different address–i.e. 675 Metropolitan Pkwy #5036.

district court that the Businessowners Liability Coverage Policy does not extend to cover the wrongful death settlement.

AA Action alternatively seeks coverage under the Umbrella Coverage Endorsement, arguing that the scope of the umbrella coverage is ambiguous and its provisions should be read in favor of AA Action. By its own terms, the Umbrella Coverage Endorsement is intended to modify the Businessowners Liability Coverage Policy, not to stand on its own as a separate policy. Therefore, except where such provisions are amended by the terms of the Umbrella Coverage Endorsement, the provisions of the Businessowners Liability Coverage Policy remain in force with regard to that Policy and apply to the "umbrella coverage" as well.

There is no language in the Umbrella Coverage Endorsement modifying the locations specified in the Businessowners Liability Coverage Policy discussed above. Because the Umbrella Coverage Endorsement does not specify a "coverage territory" distinct from the "coverage territory" defined in the Businessowners Liability Coverage Policy, it is clear that "coverage territory" in the Umbrella Coverage Endorsement consists of the five locations specified in the Businessowners Liability Coverage Policy.

AA Action argues that the Admiral Policy constitutes "unscheduled

5

underlying insurance" triggering coverage under the Umbrella Coverage

Endorsement.  The portion of the Umbrella Coverage Endorsement at issue reads:

3.  We shall only be liable for the "ultimate net loss" in excess of:

    a.    The applicable limits of "scheduled underlying insurance" as shown in the Umbrella Portion of the Declarations for "incidents" covered by "scheduled underlying insurance," plus the limits of any unscheduled underlying insurance" which also provides coverage for such "incidents."

    b.    The "unscheduled underlying insurance" or the "retained limit," whichever is greater, for "incidents" covered by "unscheduled underlying insurance" and by this policy only; or

    c.    The "retained limit" for "incidents" covered by this policy only;

but only up to the amount of our limits as shown in the Umbrella Portion of the Declarations because of a single "incident."

This language is included in "Section D: Limits of Insurance."  That language

merely limits the amount to be paid under the umbrella coverage; it does not

expand coverage to events triggered by unscheduled insurance.  The provisions

related to "unscheduled underlying insurance" explain that Transcontinental can

only be held liable for losses in excess of losses covered by other insurance.  The

scenario in which this provision would be necessary is one in which an incident

6

triggers coverage under <u>both</u> the Businessowners Liability Coverage Policy and another insurance policy not specifically contemplated in the Umbrella Coverage Endorsement schedule of insurance. The provision makes clear that, in that scenario, Transcontinental is only liable under the umbrella coverage for any amount exceeding what is covered by the other policies. The provision does not, contrary to AA Action's assertion, extend the Umbrella Coverage Endorsement to cover incidents not otherwise covered under the Businessowners Liability Coverage Policy.[3]

AA Action argues against this reading of the above-quoted language, claiming that Section 3(b) contemplates a scenario in which the Umbrella Coverage Endorsement applies to a claim for an incident that is not covered by "scheduled underlying insurance" – i.e. the Businessowners Liability Coverage Policy. We disagree. Section 3(b) expressly applies only where an "incident" is covered by unscheduled underlying insurance "and by this policy." An "incident" is only covered "by this policy"–i.e. the Businessowners Liability Coverage Policy as modified by the Umbrella Coverage Endorsement–if it occurred within the coverage territory specified in the Businessowners Liability Coverage Policy. The

---

[3]     Because AA Action's claim is not covered by the Transcontinental Policy, AA Action is not entitled to an award based on Transcontinental's alleged bad faith.

7

"incident" at issue here did not occur within the specified coverage territory, and therefore it could not have triggered coverage under the Umbrella Coverage Endorsement.

We hold that neither the Businessowners Liability Coverage Policy nor the Umbrella Coverage Endorsement provides coverage for the unindemnified portion of the wrongful death settlement paid by AA Action. Accordingly, we affirm the district court's grant of summary judgment in favor of Transcontinental.

AFFIRMED.[4]

---

[4] The parties' request for oral argument is denied.