(No. 12511.—Judgment affirmed.)

THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.—(KATHERINE KRAUJALIS, Defendant in Error.)

*Opinion filed April 15, 1919—Rehearing denied June 5, 1919.*

1. WORKMEN'S COMPENSATION—*when shooting of an employee arises out of employment.* Where an employee, while engaged in the course of his employment, is shot and killed by another employee with whom he had had a quarrel and a fight because the deceased, as a part of his duties, had reported the other's absence from work, the injury and death are an incident to and arise out of the employment.

2. SAME—*when a locomotive boiler-washer is not engaged in inter-State commerce.* A locomotive boiler-washer employed in a round-house where engines were kept which hauled inter-State and intra-State trains is not engaged in inter-State commerce while working on an engine which had not been assigned to any particular train.

CARTWRIGHT and DUNN, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

M. L. BELL, and A. B. ENOCH, for plaintiff in error.

JOHN L. HOPKINS, and A. G. ABBOTT, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Alexander Kraujalis was employed by the Chicago, Rock Island and Pacific Railway Company in its yards at Blue Island as a locomotive boiler-washer. While engaged in work he was shot and killed in the round-house of the railroad company by another employee of the company who was known as a machinist's helper and was employed by the same company. The killing occurred Monday night, November 19, 1917. Kraujalis left surviving him a wife and two children, and application was made for compensation under the Workmen's Compensation act, it being

claimed that the death occurred in the course of and arose out of the employment of deceased.

Kraujalis was, as we have said, a locomotive boiler-washer, and for some months his assistant or helper in that work was his brother-in-law, Kaupus. Saturday night, November 17, Kaupus was not on duty, and Hunt, a machinist helper, was assigned to the duty of assisting deceased in the work. Through the week machinist helpers were let off at 11:30 P. M. and on Saturday night at 10:30 P. M. Saturday night, November 17, Hunt quit and left his work about 10 o'clock P. M., and deceased was left without any helper. Kraujalis reported that fact to the foreman, Dan Dougherty, and the foreman directed him to get a Mexican to help him the rest of the night. Monday night, November 19, Kaupus was assisting Kraujalis as his helper and Hunt was at work as a helper to a machinist named Deady. About 7 o'clock P. M. the deceased went to the store-house for some oil, and about the same time Hunt was sent by Deady to the same store-house for some cotter-keys. The two men met in the store-house and a quarrel ensued. Hunt called deceased a vile name and they engaged in a fight. Kraujalis threw Hunt down and held him for some minutes. Hunt pleaded with him to be allowed to get up, which Kraujalis permitted him to do, and when he arose he struck Kraujalis on the jaw and "put him out." Kraujalis called for his brother-in-law, Kaupus, who came to the store-house and threw Hunt out. He testified Hunt said Kraujalis had reported him to the boss and that if he was fired he would kill Kraujalis. Immediately afterwards Kraujalis and Kaupus went to the office of Dougherty, the foreman, and reported that Hunt was fighting them. Hunt had returned to his place of work and Dougherty and the two men went to where Hunt was engaged and Dougherty called for Hunt. He came to where the men were and there struck or tried to strike Kaupus with a sledge hammer. In some manner the sledge hammer got

out of Hunt's hands and Kaupus testified he then tried to grab him in the breast. About that time another employee came by with a hose on his shoulder, and Kaupus took the hose and struck Hunt with the end of it, on which was a metal tip. The blow staggered Hunt, and when he recovered he ran or went away. Kraujalis and Kaupus went back to the engine they were washing out. Kaupus turned the water on and Kraujalis was handling and directing the hose. While they were thus engaged Hunt came with a revolver and began shooting at Kaupus. One bullet passed through Kaupus's shirt and he ran away. Hunt then shot Kraujalis, wounding him so severely that he died.

The above is the substance of the material testimony as to how the death occurred. The arbitrator before whom the application for compensation was heard denied compensation. A petition for a review was filed before the Industrial Commission, and upon the hearing the commission awarded compensation to the applicant. The award was confirmed by the circuit court of Cook county, and that court certified the cause was a proper one to be reviewed by the Supreme Court. Accordingly the case is before us by writ of error.

A reversal is asked by the plaintiff in error upon two grounds: (1) The injury to deceased which caused his death did not arise out of his employment; (2) both deceased and Hunt were engaged in inter-State commerce at the time of the shooting and no award can therefore be made under the State Compensation act.

The determination of the question whether an injury arose out of the employment in some cases presents one of the most difficult problems in connection with the act. (Glass on Workmen's Compensation, 40.) This court has in several cases adopted the definition of the Supreme Court of Massachusetts in the *McNicol case,* 215 Mass. 497, viz.: "It [the injury] arises out of the employment when there is apparent to the rational mind, upon consideration

of all the circumstances, a causal connection between the condition under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment." (See *Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96; *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148.) Kraujalis was not the superior of Hunt in the sense that he had authority to discharge him, but his (Kraujalis') work was such that he could not perform it without the assistance of a helper. When the helper quit before the work was completed it was his duty to ask the foreman for help, which made it necessary for him to inform the foreman his helper had quit work. It was the performance of this duty that aroused the anger of Hunt and caused him to quarrel and fight with Kraujalis. It does not appear that Kraujalis at any time was the aggressor or sought an altercation with Hunt. The meeting of the two men at the store-house the night of the shooting was accidental. Hunt had learned Kraujalis had reported to the foreman that Hunt had quit work Saturday night before quitting time and began abusing Kraujalis and called him an offensively vile name. They engaged in a fight, but Kraujalis, who was the larger man, does not appear to have done anything more than throw Hunt down and hold him until he pleaded to be allowed to get up. This Kraujalis permitted him to do, and he then struck Kraujalis on the jaw,—a blow which a witness said "put him out." It was also testified Hunt there said Kraujalis had reported him and if he was discharged he would kill him. When Kraujalis and his helper, Kaupus, went with the foreman to the place where Hunt was at work, Hunt was the aggressor according to the testimony and sought to strike Kaupus with a sledge hammer. It

is not shown by the testimony that Kraujalis there said or did anything. After Kraujalis and Kaupus had returned to and were engaged in the duties of their employment Hunt came to them with a revolver and began shooting at Kaupus. When he ran away he then turned on and shot Kraujalis, who was holding and directing the hose in washing out the boiler. The shooting was incidental to and arose out of the employment. It cannot be said, as a matter of law, that the injury was such a one as might happen to anyone and did not arise out of the employment. "It [the risk of injury] may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected therewith." (*Bryant* v. *Fissel,* 84 N. J. L. 72.) There· was a causal connection between the conditions under which Kraujalis was required to perform his work and the injury. It cannot be said that the proof does not tend to show that the shooting of Kraujalis was caused by his report to the foreman that Hunt had quit work. This the nature of his work required him to do, as he was obliged to ask the foreman for another helper. He was· acting entirely in the line of his duties, and this brought upon him the murderous assault by Hunt with a gun. That such an attack is an unusual and extraordinary result makes it none the less an incident of the employment. There is no dispute that Kraujalis was shot in the course of his employment, and we cannot say the Industrial Commission and the circuit court erred in finding the injury arose out of the employment, and this conclusion is sustained, in principle, by *Trim School District* v. *Kelly,* 7 B. W. C. C. 274, where the teacher was assaulted and killed by bad and unruly pupils. *Polar Ice and Fuel Co.* v. *Mulray,* (Ind.) 119 N. E. Rep. 149; *In re Heitz,* 218 N. Y. 148.

It was stipulated at the hearing that plaintiff in error was engaged in both inter-State and intra-State commerce. There was a division point on plaintiff in error's road after

leaving Blue Island, at Silvis, Illinois, a city of about three thousand population, about eight miles east of the Iowa line. The engines which hauled inter-State trains to Silvis hauled inter-State trains coming from the west from Silvis to Chicago. The proof tends to show that there were five engines in the round-house at Blue Island that were used principally for inter-State trains, and it is claimed the engine Kraujalis was working on when shot was one of them. Its number was 2008. The road foreman of equipment testified there was no written order assigning engines to different trains; that if the exigencies required it they would not let an engine lie idle but would use it on any train when for the benefit or advantage of the company. It was the duty of the foreman to assign the power. At times· engine 2008 was used in intra-State service. At the time Kraujalis was at work on the engine it had not been assigned to any particular train. In *Minneapolis and St. Louis Railroad Co.* v. *Winter,* 242 U. S. 353, it was alleged in the declaration that the plaintiff, when injured, was making repairs on an engine and that the parties were engaged in inter-State commerce. It was stipulated that the engine had been used in hauling freight trains over defendant's lines, which freight trains carried both intra-State and inter-State commerce, and was so used after the plaintiff's injury. The court said: "This is not like the matter of repairs upon a road permanently devoted to commerce among the States. An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an inter-State haul to be repaired and go on. It simply had finished some inter-State business and had not yet begun upon any other. Its next work, so far as appears, might be inter-State or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its

employment at the time,—not upon remote probabilities or upon accidental later events." That decision appears to us conclusive of the contention of plaintiff in error that the parties were at the time of the injury engaged in inter-State commerce.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting.