# Richmond.

## FARMERS MANUFACTURING COMPANY v. MRS. FANNIE WARFEL.

### January 14, 1926.

1. WORKMAN'S COMPENSATION ACT—*Murder of Employee by Coemployee—Liability of Employer—Case at Bar.*—In the instant case, a proceeding for compensation under the workman's compensation Act for the death of an employee, the employee was employed as night watchman and was required to throw out sawdust to be burned in one of the boilers. On the night he was killed, deceased had, some hours before he was killed, had a disagreement with a coemployee with reference to some sawdust, which in the discharge of his duties deceased had moved and which the coemployee claimed was in his way. This occurred while both were on duty. From the fact that the killing occurred several hours after this disagreement and no futher antagonism was manifested by the coemployee on the two occasions that he came in contact with the deceased between the disagreement and the killing, it was argued that the killing was not on account of the disagreement. But it was shown that assailant had told a companion worker that he was "going to kill him a G—— d—— white man," and upon the last occasion on which deceased punched the time clock and went out, the coemployee immediately followed, picking up as he went the iron bar with which he killed deceased. There was evidence of a like threat by the coemployee at another time when deceased was in discharge of his duty.

    *Held:* That an award in favor of the widow of deceased was proper.

2. MASTER AND SERVANT—*Injury from Assault by Coemployee where Claimant was the Aggressor.*—Compensation under the workman's compensation act is generally denied where a laborer suffers injury from an assault when the claimant is himself in fault as the aggressor. This because in such cases the proximate cause of the injury is not the employment, but the fault of the claimant.

3. WORKMAN'S COMPENSATION ACT—*Employment as the Contributing Proximate Cause—Injury a Natural Incident of the Work.*—If the injury can be seen to have been a natural incident of the work, and to have been contemplated by reasonable persons as the result of the exposure occasioned by the nature of the employment, it may be said to have arisen out of the employment. An injury not fairly traceable to the

Opinion.

employment as the contributing proximate cause, and which comes from a hazard to which the employee would have been equally exposed otherwise, does not arise out of the employment. The causative danger must be peculiar to the work, and incidental to the character of the business.

4. WORKMAN'S COMPENSATION ACT—*Injury Traceable to Employment is Compensable and if not so Traceable is not Compensable—Assault.*—The injury to be compensable must, of course, be shown to be a consequence or result arising out of the employment, and if this consequence or effect, i. e., the injury, can be traced to the employment as the cause, then, it is logical to hold that it arises out of the employment. If an assault can be traced to some other independent cause (having no relation to the employment), of which it is the effect or consequence, then the injury does not arise out of the employment.

5. WORKMAN'S COMPENSATION ACT—*Negligence Unnecessary.*—Under the workman's compensation act it is entirely unnecessary for the claimant to show any negligence whatever on the part of the master, and the claimant's own negligence is generally immaterial.

6. WORKMAN'S COMPENSATION ACT—*Construction of Statute.*—The workman's compensation act must be liberally construed to promote its beneficent purpose.

7. WORKMAN'S COMPENSATION ACT—*Assault by Coemployee—Burden of Proof.*—The chief if not the only burden which rests upon the claimant employee who has suffered from an assault is to show, as the proximate cause, that the assault arose out of and in the course of his employment.

Error to an award of the Industrial Commission of Virginia.

*Affirmed.*

The opinion states the case.

*Ernest S. Merrill,* for the plaintiff in error.

*Jas. G. Martin & Bro.,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

The appellant complains of an award made by the Industrial Commission in favor of Fannie Warfel, widow of Archibald Dunlap Warfel.

This is a summary of the facts which are found by the Commission and supported by the testimony:

Warfel, the deceased, was employed as a night watchman, and among his duties he was required to throw out sawdust to be burned in one of the boilers. Two negroes were also employed as night firemen, one Henry Ellington and the other Alphonso Lindsay. Warfel was killed by Lindsay early on the morning of February 26, 1925, while both were on duty. Lindsay has since been convicted of murder and sentenced to imprisonment for life. On the night he was killed, Warfel had previously, at about 11 o'clock, had some disagreement with Lindsay with reference to some sawdust which, in the discharge of his duty, Warfel had moved, and which Lindsay claimed was in his way. This occurred also while both were on duty.

[1] Emphasis is laid by the attorney for the appellant upon the fact that thereafter, at the hours of 12, 1 and 2 o'clock, respectively, on that night, Warfel returned to punch the time clock, and that no further antagonism was manifested by Lindsay on either of these occasions. From this it is argued that when Lindsay killed Warfel, at about 2 o'clock a. m., it was not on account of, or the result of, this quarrel or disagreement about their work. The facts, however, fail to support this contention. It is shown that when the angry colloquy with reference to the sawdust occurred, Lindsay cursed Warfel, the deceased, and told his companion, Ellington, in Warfel's presence, that he was "going to kill him a G—— d——— white man." It appears that after Warfel punched the clock at 2 o'clock and went out, that Lindsay immediately followed, picking up as he went the iron bar with which he killed Warfel. Ellington heard a scuffling sound outside and thereafter Lindsay returned and threw the iron bar into the furnace. He

then went out the second time and carried Warfel's body in his arms to a near by canal, into which he threw it, and when he returned told Ellington that he would kill him if he told these facts.

Ellington also relates this occurrence: Eight or ten negroes, including Lindsay, were in what the negroes call a "skin game" two weeks before, and were in Warfel's way when he came through in the discharge of his duty. They were in the door, and when Warfel asked them to move Lindsay "jumped up and allowed to those fellows that he was going to kill him, a G——d—— white man," and that later this threat was repeated at the commissary. No other motive for the murder appears.

It may not be easy to reconcile all of the cases, but the award in this case is fully sustained by the precedents.

[2] One case which is emphasized in the briefs for the appellant is *Union Sanitary Co.* v. *Davis*, 64 Ind. App. 227, 115 N. E. 676. There an employee moulder was injured in a quarrel with a fellow servant. The quarrel was about a ladle—over its nonrepair—but the fellow servant was charged with no duty with reference thereto, and was not the aggressor. Compensation was denied, as it generally is where a laborer suffers injuries from an assault when the claimant is himself in fault as the aggressor. This because in such cases the proximate cause of the injury is not the employment, but the fault of the claimant.

This rule is also applied in *Griffin* v. *Robinson & Sons*, 176 App. Div. 6, 162 N. Y. S. 313. There the claimant, an employee in a lumber mill, while engaged in carrying material, was accidentally struck by a rail which was being handled by a fellow servant, and becoming angered assaulted his fellow servant, who

retaliated and inflicted physical injuries upon him. It was held that the claimant being the aggressor was not acting within the scope of his employment, nor promoting his employer's interest, but was, on the contrary, gratifying a personal animosity, and compensation was denied.

So, in *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Comm. 382, 103 Atl. 115, L. R. A. 1918E, 496, compensation was denied to one who wrongfully began a quarrel with a fellow employee, resulting in a fight, in which the claimant was injured, on the ground that the injury did not arise out of the employment.

Compensation has been allowed, however, in many instances of injuries growing out of assaults by fellow servants, and it is only necessary to cite a few cases to indicate that under the facts of this case compensation was rightfully allowed.

In *Polar Ice & Fuel Co.* v. *Mulray*, 67 Ind. App. 270, 119 N. E. 149, the opinion was written by the same judge (Ibach) who wrote the opinion in *Union Sanitary Mfg. Co.* v. *Davis, supra*. There it appears that a servant, who was employed to check and collect shortages of his master's employees who had delivered ice, was shot and killed by one of his fellow employees as a result of a quarrel over some collections, and it was held that the claimant's death arose out of the employment; and that although the inference, under the facts in that case, that the complainant's death arose out of his employment, is not the only inference that can be drawn from the evidence, nevertheless it is a reasonable inference, and hence the finding of the industrial court is upheld. The opinion shows that there is no inconsistency between the two cases.

In *Mueller* v. *Klingman*, 73 Ind. App. 136, 125 N. E. 484, compensation was allowed where the death of a

workman was due to his being struck by a hammer thrown by a fellow servant, because of a disagreement, as having been caused by an accident arising out of and in the course of his employment.

In *Knocks* v. *Metal Package Corporation*, 231 N. Y. 78, 131 N. E. 741, it appears that a foreman called an employee's attention to a machine and charged him with responsibility for its defective operation; whereupon the employee called him a liar, and immediately the foreman struck the employee, breaking his eyeglasses and injuring his eye; and it was held that this injury was an accidental injury arising out of and in the course of the employment, within the meaning of section 3 of the workman's compensation law (Consol. Lanes, N. Y. C. 67), and that the use of the irritating words by the employee was no justification for the assault by the foreman, whose act was held not a personal act as distinguished from an act within his employment.

In *Edelweiss Gardens* v. *Industrial Commission*, 290 Ill. 459, 125 N. E. 260, compensation was allowed to dependents of a deceased waiter in a restaurant, who was struck by a boy working in the same restaurant, arising out of a sudden quarrel during the performance of their duties.

[3] While it seems impossible to formulate any general rule which can be applied to all cases, this seems to be a fair statement taken from the case last cited: "If the injury can be seen to have been a natural incident of the work, and to have been contemplated by reasonable persons as the result of the exposure occasioned by the nature of the employment, it may be said to have arisen out of the employment. An injury not fairly traceable to the employment as the contributing proximate cause, and which comes from

a hazard to which the employee would have been equally exposed otherwise, does not arise out of the employment. The causative danger must be peculiar to the work, and incidental to the character of the business. This court has sustained an award for an injury to an employee received in a fight with another employee, which was not a mere personal matter, but grew out of a quarrel over the manner of conducting the employer's business, and where the evidence tended to show the injured employee was not responsible for the assault. *Pekin Cooperage Co.* v. *Industrial Com.*, 285 Ill. 31, 120 N. E. 530; *Swift & Co.* v. *Industrial Com.*, 287 Ill. 564, 122 N. E. 796; *Chicago R. I. & Pac. Ry. Co.* v. *Industrial Com.*, 288 Ill. 126, 123 N. E. 278 [10 A. L. R. 1170]."

In *Re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, an employee was injured while performing the duties assigned to him by the assault of a fellow servant who was intoxicated, and it was held that this injury arose out of and in the course of the employment within the meaning of the workman's compensation act, and compensation was therefore allowed.

[4] The English cases which are cited in the note, L. R. A. 1916A, 309, fully support this view. The injury to be compensable must, of course, be shown to be a consequence or result arising out of the employment, and if this consequence or effect, i. e., the injury, can be traced to the employment as the cause, then it is logical to hold that it arises out of the employment. If the assault can be traced to some other independent cause (having no relation to the employment), of which it is the effect or consequence, then the injury does not arise out of the employment.

[5, 6, 7] The natural conservatism of the legal mind

causes a tendency in such cases to revert to the doctrines of negligence. It must be always remembered, however, that under these acts it is entirely unnecessary for the claimant to show any negligence whatever on the part of the master, and the claimant's own negligence is also generally immaterial. The statute must be liberally construed to promote its beneficent purpose, and the chief if not the only burden which rests upon the claimant employee who has suffered from an assault is to show, as the proximate cause, that it arose out of and in the course of his employment.

Our conclusion then is that the claimant is entitled under the act to the compensation awarded, and that the decision of the Industrial Commission is right.

*Affirmed.*