UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Judges Alston, Chafin and O'Brien
Argued at Alexandria, Virginia


FAIRFAX COUNTY GOVERNMENT

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1628-14-4                    JUDGE TERESA M. CHAFIN
                                                                  APRIL 14, 2015

VICTORIA MONROE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Jamie M. Greenzweig, Assistant County Attorney (David P.
            Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy County
            Attorney; Karen K. Gibbons, Senior Assistant County Attorney;
            Office of the County Attorney, on briefs), for appellant.

            David B. Vermont (Aschraft & Gerel, LLP, on brief), for appellee.


        The Fairfax County Government ("the employer") appeals a decision of the Virginia

Workers' Compensation Commission ("the commission") awarding temporary total disability

and medical benefits to Victoria Monroe ("Monroe") compensating her for a lower back injury

she sustained at work during a physical altercation with a coworker.  On appeal, the employer

contends that the commission erred in finding that Monroe: 1) sustained a compensable injury by

accident, 2) sustained an injury that arose out of and in the course of her employment, 3) was not

guilty of willful misconduct, and 4) did not willfully breach the employer's workplace rules and

regulations.  For the reasons that follow, we affirm the commission's decision.

                                    I.  BACKGROUND

        "On appeal, we view the evidence and all reasonable inferences that may be drawn from

that evidence in the light most favorable to [Monroe], the prevailing party below."  Stillwell v.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Lewis Tree Service, Inc., 47 Va. App. 471, 474, 624 S.E.2d 681, 682 (2006).  So viewed, the evidence established that Monroe was employed as the Wildlife Biologist for the Animal Services Division of the Fairfax County Police Department.  Among other work duties, Monroe managed several programs aimed at controlling the deer population in Fairfax County.  As a wildlife biologist, Monroe was a "civilian member" of the police department rather than a trained police officer.

On April 7, 2012, Monroe fractured two vertebrae in her back when she fell from a ladder while painting her mother's house.  As a result of these non-work-related injuries, Monroe was unable to work for approximately four months.  During this time period, many of Monroe's duties concerning the deer management programs were reassigned to one of her coworkers, Sergeant Earit Powell ("Powell").  Monroe became concerned and frustrated by Powell's lack of communication with her concerning the status of these programs during the period of time that she could not work.  This frustration culminated with a series of emails from Monroe to both Powell and her supervisors in which she expressed her concerns about Powell's hostility toward her and demanded better communication from him and other members of her department.[1]

Monroe returned to light-duty work on August 1, 2012.  Although Monroe anticipated an eventual return to full-duty work, she was assigned to work from the county's animal shelter during her period of light-duty employment rather than the wildlife trailer where she normally worked.  While some of the employees who worked at the animal shelter had permanent desks, others worked in cubicles in a small shared office.  These cubicles were arranged in rows, and a space of approximately three feet separated these rows and formed a corridor between them.

---

[1] This was not the first source of tension between Monroe and Powell.  Powell had previously insulted Monroe's baking skills on the first day of her employment, and reported her for the improper use of a county vehicle when Monroe actually had permission to use the vehicle in question.

On December 14, 2012, Monroe and Powell were assigned to work in cubicles that were positioned directly across from each other. After Powell arrived at the animal shelter and sat down at the desk of his cubicle, Monroe asked Powell from her own cubicle about a change in the type of locks used in the deer management programs. Monroe described Powell's response to her question as "rude" and "dismissive," and an argument ensued between them concerning the locks and chain of command in the Animal Services Division. During the argument, both Monroe and Powell raised their voices and rolled the desk chairs in which they were sitting closer to the entrances of their cubicles.

At some point, Monroe asked Powell to "use professional courtesy" and talk to her about the locks. When Powell continued to argue with her, Monroe began to ask Powell why he was "acting like a jerk." Monroe initially stopped her question before she reached the term "jerk," but she completed it when Powell encouraged her to continue. Powell then called Monroe a "bitch." [2] As Monroe rolled her desk chair into the corridor separating the cubicles following this remark, her chair became unbalanced and she briefly touched Powell's knee with her hand. In response, Powell pushed Monroe back in her chair with both hands and told her to never touch him again.

Powell weighed approximately 325 pounds at the time of this incident while Monroe weighed approximately 115 pounds. Monroe's chair quickly rolled about one foot away from Powell when he pushed her, and her lower back struck the back of her chair. Although Monroe did not immediately feel any pain in her back following the incident, she began to experience lower back pain the next day. Monroe was diagnosed with a lumbar strain/sprain that was

---

[2] By Powell's own testimony, Monroe said, "you're a, you're a, and I was like, I'm a what, Vicki? She said, you're being a jerk. And I said, well, you're being a bitch and just remember you started this name calling roller coaster so you can stay on it if you want to."

caused by the altercation with Powell, and this strain/sprain resulted in the aggravation of her pre-existing back condition. She was completely unable to work during the periods of December 17-31, 2012, and January 14-30, 2013. Monroe returned to light-duty work on January 31, 2013, completed a work-hardening program, and eventually returned to full-duty work on June 10, 2013.

Monroe reported the December 14, 2012 incident to the Internal Affairs Division of the Fairfax County Police Department. Following an investigation, the division found that both Monroe and Powell had violated the department's human relations policy through their unprofessional conduct and that Powell did not assault Monroe. The employer denied Monroe's claim for workers' compensation benefits concerning the lower back injury she sustained on December 14, 2012 based in part on the conclusion of the Internal Affairs investigation. Among other grounds, the employer argued that Monroe's injury was the result of her willful misconduct and violation of workplace rules requiring employees to conduct themselves professionally.

The deputy commissioner presiding over Monroe's initial compensation hearing disagreed with the employer's contentions. He discounted Powell's testimony describing the incident based on his demeanor at the hearing, and concluded that Powell angered easily based on both his demeanor and the testimony of another coworker. The deputy commissioner also did not believe Powell when he testified that he pushed Monroe away from him because he feared that she would physically harm him, noting that Powell's "apprehension of harm at the hands of someone less than half his size is unconvincing, especially [in light of] his military and law enforcement training." The deputy commissioner found that Monroe accidentally touched Powell's knee when she lost her balance, and concluded that she did not willfully violate any workplace rules or otherwise commit misconduct. Specifically, the deputy commissioner noted that Monroe's behavior reflected "carelessness and negligence," but held that "her behavior, as

- 4 -

unprofessional as it was, [did] not show a wrongful intent to disregard a specific safety rule, regulation, or company policy."

When the employer requested a review of the deputy commissioner's decision, the full commission unanimously affirmed the decision.[3] The commission held that Monroe's injury arose out of her employment because the incident occurred as the result of her attempt to speak with Powell about a work-related matter. The commission rejected the employer's contention that Monroe was the aggressor in the altercation, and found that she did not willfully violate a workplace rule or willfully commit misconduct. The employer appealed the commission's decision to this Court.

## II. ANALYSIS

Although the employer presents four assignments of error on appeal, the employer's first two assignments of error essentially address the same issue. Similarly, the employer's third and fourth assignments of error address related issues that may be analyzed together. In its first two assignments of error, the employer contends that Monroe's injuries were not caused by an accident and did not arise out of her employment because she was the aggressor in her altercation with Powell and therefore personally responsible for the assault.[4] In its third and fourth

---

[3] The commission also incorporated the deputy commissioner's recitation of the facts of the case into its opinion and adopted his factual findings as its own.

[4] The employer's first two assignments of error state verbatim: "1) the commission erred in finding that the Claimant sustained a compensable injury by accident; [and] 2) the commission erred in finding that the Claimant's alleged injury arose out of and in the course of employment." While these assignments of error could be construed to also challenge whether Monroe was actually injured during the altercation with Powell and the extent of any injuries she suffered, the employer did not present any argument concerning these issues in the briefs it filed with this Court or in oral argument. As the employer has limited its argument concerning these assignments of error to the issue of whether or not Monroe was barred from receiving workers' compensation benefits because she was the aggressor in the altercation, we limit our analysis to that issue and deem any other issues that may be encompassed in the first two assignments of error waived by the employer. See Rule 5A:20(e) ("The opening brief of appellant shall contain

assignments of error, the employer argues that Monroe's unprofessional behavior constituted willful misconduct and a willful violation of workplace rules that barred her from receiving workers' compensation benefits. Upon reviewing this case, we conclude that the commission did not err by holding that Monroe's lower back injury arose out of her employment and that she did not willfully violate a workplace rule or otherwise willfully commit misconduct.

### A. MONROE'S INJURY AROSE OUT OF HER EMPLOYMENT

The employer contends that Monroe's lower back injury did not arise out of her employment because she was the aggressor in her altercation with Powell and therefore personally responsible for her injury. The question of whether an accident arises out of employment presents a mixed question of law and fact. Stillwell, 47 Va. App. at 477, 624 S.E.2d at 683. While we review the ultimate legal issue *de novo*, "the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008); see also Code § 65.2-706(A) ("an award of the commission . . . shall be conclusive and binding as to all questions of fact"). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Id.

Injuries sustained by employees during willful and intentional assaults are compensable under the Virginia Workers' Compensation Act in certain circumstances. "[W]here a claimant has been injured while fighting with a co-worker, that injury 'arises out of' the claimant's

_____

. . . the argument (including principles of law and authorities) relating to each assignment of error.").

- 6 -

employment only if two elements are satisfied: (1) the fight was not personal, but rather, was related to the manner of conducting business, and (2) the claimant was not responsible for the fight." Stillwell, 47 Va. App. at 481, 624 S.E.2d at 685. A claimant is not entitled to workers' compensation benefits when he or she incurs injuries during a fight for which he or she is "'in fault as the aggressor.'" See id. at 478, 624 S.E.2d at 684 (quoting Farmers Mfg. Co. v. Warfel, 144 Va. 98, 101, 131 S.E. 240, 241 (1926)).

> The rationale for denying benefits to the aggressor is that, "in such cases the proximate cause of the injury is not the employment, but the fault of the claimant." In other words, if an employee is at fault in causing a fight and is injured during the course of that fight, those injuries do not "arise out of" the aggressor's employment because the injuries were not proximately caused by the employment, but rather, by "the fault of the claimant."

Id. (quoting Farmers, 144 Va. at 101, 131 S.E.2d at 241). The issue of whether an employee was the aggressor or otherwise responsible for a fight is a question of fact. See id. at 483 n.6, 624 S.E.2d at 686 n.6.

In the present case, credible evidence supported the commission's decision that the altercation between Monroe and Powell was work-related. While some degree of personal animosity existed between Monroe and Powell before the December 14, 2012 incident, the commission correctly noted that "[t]he incident was not purely personal." The altercation began when Monroe asked Powell about a work-related matter. Monroe asked Powell about a change in the type of locks used in the deer management programs, Powell replied in a rude or dismissive manner, and an argument ensued that culminated with Powell pushing Monroe away from him. Therefore, the physical contact stemmed directly from the discussion of a work-related issue, the change of the type of locks used in the deer management programs that Powell helped administer while Monroe was injured and unable to work.

Moreover, credible evidence supported the commission's decision that Monroe was not the aggressor in the December 14, 2012 incident. The commission held that Monroe did not willfully instigate the altercation with Powell. As previously discussed, the altercation began when Monroe simply attempted to discuss a work issue. When Powell responded in a rude manner and refused to discuss the issue with her, Monroe became frustrated and insinuated that Powell was "acting like a jerk." She attempted to stop her comment, however, before she referred to Powell unprofessionally and only completed her sentence when Powell encouraged her to do so. In this specific context, Monroe's comments cannot be viewed as particularly aggressive behavior. See also Farmers, 144 Va. at 103, 131 S.E. at 241 (citing Knocks v. Metal Package Corp., 231 N.Y. 78, 131 N.E. 741 (1921), and noting that the use of "irritating words" by a coworker did not justify an assault in that case).

Furthermore, the commission expressly held that the physical contact between Monroe and Powell preceding the assault in question was accidental rather than intentional. The commission found that Monroe accidentally touched Powell's leg when she rolled her chair toward him after he called her a "bitch." [5] Monroe testified that she only briefly touched Powell's leg with her hand when she lost her balance in the chair and that she did not intend to assault Powell. The deputy commissioner disbelieved Powell when he testified that he feared that Monroe intended to harm him, and the full commission adopted this credibility determination.

As previously stated, we are bound by the commission's factual findings and credibility determinations when those findings are supported by credible evidence, see Wagner, 12

---

[5] The commission did not decide whether Powell escalated the argument by calling Monroe a "bitch" in response to her relatively mild comment implying that he was a "jerk," and therefore we reach no conclusions concerning that specific issue.

Va. App. at 894, 407 S.E.2d at 35, and we find that credible evidence supported the commission's conclusions regarding the physical contact between Monroe and Powell. The present case only involved very slight physical contact,[6] and the commission could reasonably infer that Monroe's brief and minor contact with Powell was accidental rather than intentional. Monroe only touched Powell for a few seconds, and she did not engage in any other physical contact with him after he pushed her. Additionally, the commission could reasonably infer that Monroe likely did not intend to instigate a physical altercation with a coworker who was approximately three times larger than her who also had both military and police combat training.

We hold that credible evidence supported the commission's determination that Monroe was not the aggressor in the work-related altercation that she had with Powell on December 14, 2012. The altercation began when Monroe asked Powell a legitimate question about a work issue, her unprofessional comments were encouraged by Powell, and any physical contact that Monroe had with Powell before he pushed her away from him was accidental. Accordingly, the commission did not err by concluding that the lower back injury that Monroe sustained during this incident arose from her employment.

### B. MONROE DID NOT WILLFULLY COMMIT MISCONDUCT OR WILLFULLY VIOLATE A WORKPLACE RULE

On appeal, the employer contends that the commission erred in concluding that Monroe did not willfully commit misconduct or breach its rules and regulations requiring professional conduct in the workplace. The employer argues that Monroe's unprofessional behavior during the December 14, 2012 altercation with Powell violated its workplace rules and constituted

---

[6] The physical contact in this case was much less extreme than the contact addressed in Stillwell, 47 Va. App. at 682-83, 624 S.E.2d at 475-76 (brawl between two tree service employees), and Farmers, 144 Va. at 100, 131 S.E. at 240 (one employee murdered another with an iron bar).

- 9 -

willful misconduct. Because Monroe's injuries were caused by this alleged willful misconduct and breach of workplace rules, the employer claims that Code § 65.2-306 bars her from receiving workers' compensation benefits. We disagree with the employer's argument.

Code § 65.2-306(A) provides, in pertinent part, that "[n]o compensation shall be awarded to the employee or his dependents for an injury or death caused by: [t]he employee's willful misconduct . . . [or t]he employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . ."[7] Code § 65.2-306(A)(1) and (5).

> "To prevail on the defense of a willful violation of a safety rule, [the] employer must prove that: (1) the safety rule was reasonable; (2) the rule was known to the employee; (3) the rule was promulgated for the benefit of the employee; and (4) the employee intentionally undertook the forbidden act."

Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 350, 768 S.E.2d 261, 264 (2015) (quoting Owens Brockway & Nat'l Union Fire Ins Co. v. Easter, 20 Va. App. 268, 271, 456 S.E.2d 159, 161 (1995)).

> Whether the rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and fact . . . *[b]ut the questions of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of the employee's accident are issues of fact.*

Owens Brockway, 20 Va. App. at 271-72, 456 S.E.2d at 161 (emphasis added); accord Layne, 64 Va. App. at 350, 768 S.E.2d at 264-65 (quoting Mills v. Virginia Elec. & Power Co., 197 Va. 547, 551, 90 S.E.2d 124, 127 (1955)).

---

[7] Although Code § 65.2-306(A)(2) also provides that no compensation shall be awarded to an employee for an injury caused by that employee's attempt to injure another, the employer does not argue that this provision of Code § 65.2-306 prohibits Monroe from receiving workers' compensation benefits.

The rules concerning workplace professionalism at issue in the present case were set forth in Fairfax County's Standards of Conduct, a set of rules applicable to all Fairfax County employees, and a General Order of the Fairfax County Police Department that outlined an additional series of regulations applicable to police officers. A section of the Standards of Conduct entitled "Personal Behavior and Conduct" specifically required employees to "[d]emonstrate professionalism" and "[e]xercise courtesy, respect and tact when dealing with fellow employees." The Standards of Conduct also prohibited employees from "[t]hreatening, assaulting, intimidating, or harassing another employee," "[u]sing obscene language toward fellow employees," and otherwise "[e]ngaging in rude or unprofessional behavior or disorderly conduct." Section 201.13 of the order from the police department, entitled "Human Relations," required employees to promote "an image of professionalism at all times," treat fellow employees with "respect, courtesy and tact," and "conduct themselves in a manner that promotes teamwork and cooperation." On appeal, the employer argues that Monroe violated these rules and regulations and emphasizes that the Internal Affairs Division of the Fairfax County Police Department found that Monroe's unprofessional conduct on December 14, 2012 violated the department's human relations policy.[8]

Rules mandating professional conduct in the workplace have a myriad of purposes and benefit both employers and employees. These rules ensure appropriate and efficient work environments and can attract and promote business. Additionally, these rules encourage civility among employees and discourage office quarrels that can, in extreme cases, lead to workplace

---

[8] The employer also argued before the commission that Monroe breached a rule that required her to be truthful to officers conducting internal affairs investigations. The deputy commissioner, however, found that Monroe was truthful during the investigation of the December 14, 2012 incident and noted that a potential violation of this rule could not have caused Monroe's injuries. On appeal, the employer did not argue that Monroe's injuries were caused by a violation of this rule and accordingly this issue is not before us in the present case.

violence. Without determining the primary purpose of the employer's professionalism rules, the commission found that Monroe violated the employer's rules through her unprofessional behavior during her altercation with Powell. The commission, however, also concluded that Monroe did not intentionally breach the employer's workplace rules or otherwise commit misconduct.

In order for the subsections of Code § 65.2-306(A) at issue in this case to bar an employee from receiving workers' compensation benefits, that employee must commit *willful* misconduct or *willfully* breach a reasonable workplace rule or regulation. See Code § 65.2-306(A)(1) and (5). While the employer may prevail on the defense established by Code § 65.2-306 without "proving that the employee, with the rule in mind, purposefully determined to break it," see Spruill v. C.W. Wright Constr. Co., 8 Va. App. 330, 334, 381 S.E.2d 359, 361 (1989), "willful misconduct 'imports something more than a mere exercise of the will in doing the act. It imports a wrongful intention.'" Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993) (quoting Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 164, 335 S.E.2d 851, 852 (1985)). Stated another way, "willful misconduct requires something more than negligence." Keppel, 1 Va. App. at 164, 335 S.E.2d at 852. "Proof of negligence, even gross negligence, alone will not support the defense [provided by Code § 65.2-306] . . . ." Buzzo, 17 Va. App. at 332, 437 S.E.2d at 208.

As previously stated, whether an employee has committed willful misconduct or the willful breach of a workplace rule are questions of fact, and the commission's conclusions concerning these issues are binding on appeal when they are supported by credible evidence. See Owens Brockway, 20 Va. App. at 471-72, 456 S.E.2d at 161; see also Adams v. Hercules, Inc., 21 Va. App. 458, 463, 465 S.E.2d 135, 137 (1995). We find that credible evidence supported the commission's conclusion that Monroe did not willfully breach the employer's

- 12 -

professional conduct rules or otherwise willfully commit misconduct. The same evidence and inferences that established that Monroe was not the aggressor in the altercation with Powell also implied that she did not intend to act unprofessionally.

The December 14, 2012 altercation began when Monroe simply asked Powell a question about work. The conversation, however, turned into an argument in which both parties raised their voices and called each other names. Although Monroe acted unprofessionally when she raised her voice, no evidence in the record established that she intended to start an argument with Powell when she asked him why the type of locks used in the deer management programs had changed. Moreover, Monroe attempted to stop her unprofessional name-calling statement before she referred to Powell as a "jerk," and she only completed her sentence when she was goaded on by Powell. Thus, Monroe attempted to avoid insulting Powell and the commission could imply that she would not have done so without his encouragement and active participation in the perpetuation of the argument.

Furthermore, the commission found that Monroe accidentally touched Powell's leg when she lost her balance. While Monroe may have acted incautiously when she rolled her chair toward Powell, her conduct only amounted to negligence. She testified that she only rolled her chair towards Powell to reach a better physical position from which to continue the argument and that she did not intend to assault or even touch Powell. As Monroe only accidentally touched Powell's leg, this conduct was not willful and cannot support the employer's defense.

While Monroe's conduct was careless, negligent, and ultimately unprofessional, credible evidence supported the commission's decision that Monroe did not willfully commit misconduct or breach the employer's rules and regulations concerning professionalism in the workplace. Monroe did not intentionally start the argument with Powell, she attempted to refrain

- 13 -

from referring to him unprofessionally, and her physical contact with him was accidental. Accordingly, the commission did not err regarding this issue.

## III. CONCLUSION

As credible evidence supported the commission's decision, it did not err by concluding that Monroe's lower back injury arose from her employment and that she did not willfully commit misconduct or breach any workplace rules. Therefore, we affirm the commission's decision.

<u>Affirmed.</u>